821 F.2d 478
 44 Fair Empl.Prac.Cas. 60, 43 Empl. Prac.
Dec. P 37,164,
45 Empl. Prac. Dec. P 37,651, 56 USLW 2011,
40 Ed. Law Rep. 116
 Sylvester LEGRAND and Henry Rayfus, Appellants,
v.
TRUSTEES OF UNIVERSITY OF ARKANSAS AT PINE BLUFF; Bradley
D. Jesson; Jacqueline Douglas; Robert D. Pugh; Hugh B.
Chalmers; Jack L. Williams; Hall McAdams, III; Keneaster
Hodges, Jr.; Gun Blass, II; M.A. Jackson, W. Sykes Harris,
Sr.,; and Dr. Lloyd V. Hackley, Chancellor, Appellees.
 No. 86-1789.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 13, 1987.
Decided June 16, 1987.
 
 Marion A. Humphrey, Little Rock, Ark., for appellants.
 Ginger P. Crisp, Fayetteville, Ark., for appellees.
 Before LAY, Chief Judge, HEANEY, Circuit Judge, and CAHILL,* District Judge.
 LAY, Chief Judge.
 
 
 1
 Sylvester Legrand and Henry Rayfus appeal the dismissal of their claims against the University of Arkansas at Pine Bluff (UAPB) alleging employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e-17, and 42 U.S.C. Sec. 1981. The district court[1] found that the plaintiffs had not made a prima facie case of discrimination and the defendant had established legitimate, non-discriminatory reasons both for discharging the plaintiffs and for failing to rehire them when positions became available. The plaintiffs challenge these conclusions. We reverse and remand for further proceedings.
 
 Facts
 
 2
 Legrand and Rayfus are black, certified journeymen electricians who were employed in the electrical department of the Physical Plant at UAPB. Legrand had been with UAPB since 1975 and Rayfus since 1974. The university employed both men on a contractual basis. Both testified at trial that they knew their contracts were subject to renewal every year. The only other employee in the electrical department was their supervisor Willie Pree, who is also black. Pree was responsible for the work schedules of Legrand and Rayfus, and he had prepared their employee evaluations for several years.
 
 
 3
 Vice Chancellor Benson Otovo testified that in 1983, UAPB instituted budget cutbacks. Nineteen positions in the Physical Plant were eliminated, including one of the two journeyman electrician positions. On July 1, 1983, twenty-seven contracts in the Physical Plant, including the plaintiffs', were not renewed for fiscal 1983-84. After their contracts were not renewed, Legrand and Rayfus applied for any parttime or fulltime position at UAPB. Nineteen positions eventually were filled in the Physical Plant after the plaintiffs' contracts were not renewed.[2] Blacks filled twelve of the positions, and whites filled seven; neither plaintiff was interviewed or offered any of these jobs.
 
 
 4
 On July 5, 1983, Michael Cummings, a white male, applied for the journeyman electrician position, and he was hired on a temporary basis on July 15. On August 25, 1983, Burton Henderson, who is white and who had served as director of the Physical Plant since March, 1983, recommended Cummings for permanent appointment to the journeyman electrician position. Cummings eventually became supervisor of the electrical department when Pree retired.
 
 
 5
 The plaintiffs filed suit against UAPB, alleging discrimination in the nonrenewal of their contracts and in the failure of UAPB to consider or hire them for jobs for which they applied and were qualified. UAPB contends that the decision to terminate the plaintiffs was based on budget cutbacks and the need to employ only the best qualified, most productive workers.
 
 Discussion
 
 6
 Under traditional guidelines, a plaintiff establishes a prima facie case of racial discrimination in a Title VII and Sec. 1981 discharge action by showing that: (1) he belongs to a racial minority; (2) he was qualified for the job and satisfied its normal requirements; (3) he was discharged; and (4) after his discharge, the employer assigned a non-minority employee to perform the same work. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The district court concluded that white is the minority race at UAPB and black is the dominant race because UAPB is classified as a traditionally black campus of the university and the overwhelming majority of employees in the Physical Plant is black. The court also found that the plaintiffs were unqualified for the job because they were not dependable. On these bases, the court held that the plaintiffs had failed to establish a prima facie case. We find the failure of the trial court to recognize a prima facie case to be legal error.
 
 
 7
 The proof required to establish a prima facie case of discrimination will necessarily vary in different fact situations. The operative inquiry is whether the plaintiff has produced sufficient evidence to create an inference--that is, a rebuttable presumption--that an employment-related decision was based on an illegal racial criterion under the Act. See McDonnell Douglas Corp. v. Green, 411 U.S. at 802 n. 13, 93 S.Ct. at 824 n. 13.
 
 
 8
 Title VII prohibits employment discrimination against "any individual" because of the individual's race.[3] Its terms are not limited to discrimination against members of any particular race. McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 278-79, 96 S.Ct. 2574, 2577-78, 49 L.Ed.2d 493 (1976). Instead, the Act proscribes "[d]iscriminatory preference for any [racial] group, minority or majority." Id. at 279, 96 S.Ct. at 2578 (quoting Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971)). In McDonald v. Santa Fe Trail, 427 U.S. at 279 n. 6, 96 S.Ct. at 2578 n. 6 the Court noted that the racial minority requirement of McDonnell Douglas "was set out only to demonstrate how the racial character of the discrimination could be established in the most common sort of case, and not as an indication of any substantive limitation of Title VII's prohibition of racial discrimination." Cf. Byrd v. Roadway Express, Inc., 687 F.2d 85, 86 (5th Cir.1982) (prima facie case of racial discrimination in discharge may be established even if plaintiff is replaced by individual of his own race). Thus, we think it clear that it is not an essential element to the establishment of a prima facie case that a plaintiff prove he is within a minority group. Each case must withstand an independent analysis. The overall circumstances may dictate, as they do here, that a prima facie inference of discrimination based upon race has been established. Cf. Leichihman v. Pickwick Int'l., 814 F.2d 1263, 1269 (8th Cir.1987) (prima facie case in age discrimination action turns on particular facts that create an inference of discrimination).
 
 
 9
 UAPB is not an autonomous institution; it is but one campus in a multiple-campus system of the University of Arkansas (UA). The overwhelming majority of students and employees at UA is white. The board of trustees, which has ultimate policymaking authority at UA, consists of nine whites and one black.
 
 
 10
 The plaintiffs' immediate supervisor Willie Pree and the acting director of the Physical Plant at the time of the decision to discharge plaintiffs, James Collins, are both black. Benson Otovo, the Vice Chancellor for Fiscal Affairs and Administrative Services, is also black. On Collins' recommendation, Otovo determined in January, 1983, not to renew the plaintiffs' contracts. Burton Henderson, who is white, became permanent director of the Physical Plant in March, 1983. In the years that the plaintiffs had worked for UAPB, there had never been a white director of the Physical Plant. Collins testified that although the recommendation to lay off plaintiffs had been made before March of 1983, Henderson retained the final authority to decide which positions would be eliminated. Henderson reviewed the recommended cuts and approved the nonrenewal of plaintiffs' contracts. Henderson also made the decision to hire Cummings for the remaining journeyman electrician position.
 
 
 11
 The district court also found that the plaintiffs were not qualified for the job because they were "unreliable," an assessment that turned largely on subjective evidence produced by the defendant. Even if we assume that this finding is valid, it should not affect the district court's evaluation at the prima facie stage of whether the plaintiffs have established that they are qualified for the job.[4] For purposes of establishing a prima facie case, the plaintiffs need only show their objective qualifications for the job. Lynn v. Regents of the Univ. of Cal., 656 F.2d 1337, 1344-45 (9th Cir.1981) (for prima facie case, plaintiff need only prove objective job qualifications; subjective judgments of relative qualifications should be established by employer at step two), cert. denied, 459 U.S. 823, 103 S.Ct. 53, 74 L.Ed.2d 59 (1982); Davis v. Califano, 613 F.2d 957, 964 (D.C.Cir.1979) (court should consider only minimum objective qualifications to establish prima facie case). Here, the plaintiffs proved by a preponderance of the evidence that they were experienced, journeymen electricians, and UAPB does not dispute this. They also adduced evidence through employee evaluations that they satisfied the normal requirements of the job prior to their dismissal. This is all that is required at the prima facie stage. We conclude that there is sufficient evidence to establish a prima facie case of racial discrimination under Title VII.
 
 
 12
 The defendant urges that whether the plaintiffs made out a prima facie case is irrelevant since the district court reached the ultimate issue and found that there was no unlawful discrimination. See United States Postal Serv. Bd. v. Aikens, 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). To accept this proposition is to ignore the allocation of burdens set out by the Supreme Court in McDonnell Douglas and to disregard the inference of discriminatory intent to which these plaintiffs are entitled. When a district court erroneously fails to recognize a prima facie case under Title VII, a reviewing court cannot be certain whether this legal error colored the factual findings favoring the defendant. Failure to recognize a prima facie case when one has been established detracts from the proper weight the trier of fact must afford to the plaintiffs' evidence and the ongoing inference of discrimination properly drawn from it. Cf. Wells v. Gotfredson Motor Co., Inc., 709 F.2d 493, 496 n. 1 (8th Cir.1983). In this case, the trial court's failure to recognize the plaintiffs' prima facie case left the court to consider only the defendant's evidence of what it claimed were the nondiscriminatory reasons for discharging the plaintiffs. There is little doubt why the defendant was successful.
 
 
 13
 Ordinarily when this occurs, we would remand the case to the trial court for reevaluation, with proper weight being given to the inference of discriminatory intent established by the plaintiffs' prima facie case. See Pullman-Standard v. Swint, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982). In this case, however, there exists more than an error of law. Because the evidence of pretext is so strong, we conclude that the district court's finding of no discriminatory intent is clearly erroneous and leaves us with "a firm conviction that a mistake has been made." Anderson v. City of Bessemer, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).
 
 
 14
 The district court found that the plaintiffs were not retained after many years' employment at UAPB because they were undependable. The plaintiffs' job evaluations, however, reveal the contrary. For example, in his 1982 evaluation, Rayfus measured, on a scale of zero (lowest) to four (highest), two's in dependability and initiative, three's in responsibility and punctuality, and four's in attitude and work capacity. In his 1981 evaluation, Rayfus received average, above average, or superior ratings in all categories. In Legrand's 1982 evaluation, he received a two in dependability, three's in initiative, responsibility, and punctuality, and a four in interest and enthusiasm. In his 1981 evaluation, Legrand also received average, above average, or superior ratings in all categories.
 
 
 15
 The court also found that budget restrictions caused UAPB's decision to terminate the plaintiffs' contracts and that "a consistent pattern of unauthorized absences and their abuse of sick leave reduced [plaintiffs'] productivity to the level where neither could have performed the duties expected of a single journeyman electrician after the cut-back." The court emphasized, however, that "quality of work, tardiness, and insubordination" also contributed to UAPB's decision. The plaintiffs testified that they were originally told that budget reductions forced the nonrenewal of their contracts.[5] It was only after they instituted this action that they were told poor performance brought about the discharge as well as the refusal to reemploy them. We agree with the plaintiffs that based upon the overall record, such an assertion is not credible.[6]
 
 
 16
 The plaintiffs also testified that they often worked overtime and at school events in the evening and they were compensated for this with time off rather than overtime pay. They further testified that they understood they were entitled to a fixed number of sick days per year, whether they were sick or not.[7] The plaintiffs' understanding of the procedures regarding compensation time and sick leave formed the basis of their actions. Legrand and Rayfus had been taking comp time and sick days for many years, yet the record contains minimal evidence of any disciplinary action taken against them because of this. Employment records spanning many years provide a more objective picture of the plaintiffs' work history at UAPB than the defendant's post hoc, conclusory justifications for the discharge and failure to rehire. If UAPB officials considered either plaintiff a poor performer or otherwise undependable, they had ample opportunity to discharge him. The failure to do so and the paucity of evidence of inadequate performance strongly suggest that considerations other than performance and dependability came into play.
 
 
 17
 After the plaintiffs were discharged, neither was given the opportunity to apply for the remaining journeyman electrician position that eventually went to Michael Cummings. Testimony of UAPB officials establishes that the position was not advertised, and the selection of Cummings was made outside any objective recruiting or hiring procedures. Pree and Bankston both testified that they considered either plaintiff capable of doing the job. Pree testified that there was nothing in their work records that would have caused him not to recommend them. Neither plaintiff was given any reason for UAPB's refusal to consider him for the remaining journeyman position or any of the other nineteen positions eventually filled.
 
 
 18
 Plaintiffs also argue that because the UAPB campus is predominantly black, the school was interested in attracting white students and employees and in replacing black employees with white employees. The defendant concedes that UAPB is subject to the directives of Adams v. Richardson, 480 F.2d 1159 (D.C.Cir.1973), requiring certain state-operated higher education institutions that receive federal funds under Title VII to end segregation. Before 1983, there were no whites in the Physical Plant. At the time of trial in 1986, there were six whites and one hundred blacks in the Physical Plant. Despite this change, UAPB officials testified that there had been no significant alteration in racial composition at UAPB for many years. UAPB complains that it is faced with the Hobson's choice of maintaining the current racial imbalance and risking noncompliance with Adams v. Richardson or altering the imbalance by hiring whites to replace blacks and risking Title VII suits such as this. Whether the defendant was motivated by a federal court edict to replace black workers with whites, particularly in the Physical Plant, is not at issue here. This is a disparate treatment case. The issue is whether the plaintiffs were denied employment because of racial considerations. UAPB did not posture its defense in terms of justifiable affirmative action. If it had, many other considerations would have come into play and a totally different record, controlled by distinct legal principles, would be under review in this appeal.
 
 
 19
 We find that the overwhelming evidence shows that the defendant's reasons for failing to renew plaintiffs' contracts or rehire them when the opportunity arose were pretextual. Even assuming that budget cutbacks caused the nonrenewal of some contracts, the record shows that only one journeyman electrician job was eliminated. The person selected for the remaining position was inexperienced, without seniority, and white. This and the complete failure to consider the plaintiffs for job vacancies created shortly after the cutback lead to one conclusion: the plaintiffs were rejected because of their race.
 
 
 20
 The cause is remanded to the district court with directions to enter judgment for the plaintiffs and against the defendant and to hold an evidentiary hearing on damages and whatever other equitable relief the court finds appropriate to make the plaintiffs whole.
 
 
 
 *
 The HONORABLE CLYDE S. CAHILL, United States District Judge for the Eastern District of Missouri, sitting by designation
 
 
 [1]
 The Honorable Elsijane T. Roy, United States District Court for the Eastern District of Arkansas, presiding
 
 
 [2]
 The record does not establish the dates in 1983 when recruiting and hiring for the nineteen positions began and ended. The evidence indicates that most of the jobs were filled after July 1, 1983
 
 
 [3]
 42 U.S.C. Sec. 2000e-2(a)(1). The Act provides in pertinent part:
 (a) Employers. It shall be an unlawful employment practice for an employer--
 (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;
 
 
 [4]
 A determination of an employee's reliability necessarily involves subjectivity. One UAPB employee evaluation form lists traits such as "dependability," "cooperation," and "responsibility." A supervisor fills in the appropriate level of performance, from zero (lowest) to four (highest). Another UAPB form includes as performance criteria "integrity," "dependability," and "attitude." In the aggregate, these traits may help to measure one's reliability, but the subjective judgments that come into play are undeniable. Evidence of an employer's subjective intent and pretext, if any, is raised at the second and third stages of proof in a Title VII case; evidence of one's objective qualifications is all that is required at the prima facie stage
 
 
 [5]
 In the letters of May 3, 1983, notifying Legrand and Rayfus of the nonrenewals, they were given no reason for UAPB's action. After they challenged the nonrenewals, they were told that budget reductions forced cutbacks in staff
 
 
 [6]
 The Defendant's Answers to Plaintiffs' First Interrogatories do not cite work deficiency as the reason for nonrenewal of the contracts. When asked to state the reason for terminating Legrand and Rayfus, the defendant responded in Answer No. 2:
 Plaintiffs were appointed to their positions on an annual basis, which expired at the end of each fiscal year. Budget cut-backs for fiscal year 1983-84 forced a reduction in the number of positions at the Physical Plant. As a result, Plaintiffs were not offered a contract for fiscal year 1983-84.
 When asked to state the reasons for not rehiring either plaintiff, presumably referring to other positions for which plaintiffs applied, the defendant referred to Answer No. 2.
 
 
 [7]
 There is inconsistent evidence in the record regarding the sick leave policy at UAPB. Evidently at one time, supervisors in the Physical Plant had some discretion in administering sick leave