# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-1710

———————

Nancy M. Kratzer,          *
         *
         *
       Appellant,        *    Appeal from the United States
         *    District Court for the
    v.          *    Northern District of Iowa.
         *
Rockwell Collins, Inc.,      *
David A. Bellendier, and     *
Eugene R. Nedved,        *
         *
       Appellees.        *

———————

Submitted: November 17, 2004
Filed: February 22, 2005

———————

Before SMITH, BEAM, and BENTON, Circuit Judges.

———————

BENTON, Circuit Judge.

Nancy Mae Reddick Kratzer sued Rockwell Collins, Dave Bellendier, and Eugene Nedved for disability discrimination, sex discrimination, and retaliation in violation of the Americans with Disabilities Act of 1990, Title VII of the Civil Rights Act of 1964, and the Iowa Civil Rights Act. The district court[1] granted summary

———————

[1]The Honorable John A. Jarvey, United States Magistrate Judge, for the Northern District of Iowa, to whom the case was referred for decision by consent of

judgment to the defendants on all claims. Jurisdiction being proper under 28 U.S.C. § 1291, this court affirms.

This court reviews de novo a grant of summary judgment. *Carter v. St. Louis University*, 167 F.3d 398, 400 (8th Cir. 1999). Viewing the facts most favorably to the non-moving party, summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Carter*, 167 F.3d at 401. This court may affirm a grant of summary judgment on any ground supported by the record, even if not relied upon by the district court. *Habib v. NationsBank*, 279 F.3d 563, 566 (8th Cir. 2001).

## I.

## A. Disability Discrimination

In 1994, while employed at Rockwell, Kratzer suffered a workplace injury limiting her ability to use a foot pedal or sit for more than one hour. As an accommodation, Rockwell permitted the use of an adjustable chair, and an electrical cart for her travel between workstations.

Kratzer's job classification was 407B, sheet metal straightener. Membership in the International Brotherhood of Electrical Workers (IBEW) entitled Kratzer to seek training and testing for the 408B classification. Testing for 408B included a written and a four-part mechanical test – producing sheet metal on four different machines.

---

the parties pursuant to 28 U.S.C. § 636(c) (2002).

In April 2000, Kratzer passed the written test. In May she requested to take the mechanical test. A meeting was held that month to assess potential accommodations. At the meeting, a Rockwell occupational ergonomics therapist suggested modifying a foot pedal to knee level so Kratzer could operate it without using her foot. Kratzer opposed the modification because she had additional physical limitations needing accommodations. Rockwell and Kratzer agreed that she would obtain an updated restrictions evaluation from her doctor before any testing.

On June 6, 2000, defendant Bellendier told Kratzer she had to pick a machine and test that day. She refused. On July 5, 2000, IBEW and a Rockwell human resources manager told her she had 2 options: test for the 408B classification with the accommodations documented in her file, or obtain an updated restrictions evaluation and test accordingly. Kratzer did not provide an updated evaluation until over two years later.

## B. Gender Discrimination

Six female Rockwell employees complained of derogatory name-calling, staring, glaring, intimidating speech, or gesturing by male co-employees. After the women's complaints, management verbally warned the harassers. In July 2000, Kratzer learned that a male co-employee had called her vulgar names ("bitch" "whore") and stated that, "they better not give her that labor grade 8." Three other women testified that male co-employees sabotaged women's training and testing by subjecting them to different rules or unfairly altering written tests. A former IBEW business manager believed that vacancy announcements for promotions "disappeared" when the most qualified was a female, but conceded this had never been proved. Finally, six other females stated they experienced unfair treatment: males were allowed to take breaks while females were reprimanded, females were "farmed out" to other departments, and females were refused time on different machines.

## C. Retaliation

Kratzer complained to the Iowa Civil Rights Commission in September 2000. A company-wide reduction-in-workforce in January 2002 demoted Kratzer two pay grades, out of the sheet metal fabrication department. Kratzer amended her complaint in September 2002 to include a claim for retaliation.

## II.

## A. ADA

In the absence of evidence of direct discrimination, ADA claims are evaluated by the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, Kratzer must establish a prima facie case of discrimination: an ADA-qualifying disability; qualifications to perform the essential functions of her position with or without a reasonable accommodation; and an adverse action due to her disability. *Id.* at 802-04; *see also* **Kincaid v. City of Omaha***,* 378 F.3d 799, 804 (8th Cir. 2004). Once Kratzer makes a prima facie case, Rockwell must proffer a legitimate, nondiscriminatory reason for the adverse employment action. *See* **McDonnell Douglas**, 411 at 802. If Rockwell proffers such a reason, Kratzer must show that it is a pretext. *See id.* at 803. The district court held that Kratzer failed to establish a prima facie case, as she could not perform the essential functions of the job. An employee is qualified for a job when she meets the necessary prerequisites for the job – training, education, experience – and can perform the essential functions, with or without reasonable accommodation. **Cravens v. Blue Cross and Blue Shield of Kansas City***,* 214 F.3d 1011, 1016 (8th Cir. 2000). The district court focused on whether Kratzer could perform the essential functions, with or without accommodation. This court finds Kratzer lacked the requisite training. *See* **Habib**,

279 F.3d at 566 (summary judgment can be affirmed on any ground supported by the record).

Kratzer does not meet the prerequisites of the 408B job. To satisfy the 408B criteria, Kratzer needed to train on a sheet-metal-producing machine, then demonstrate the training by passing the 408B mechanical test. Kratzer, however, never passed the 408B test. Because she did not satisfy the prerequisites for 408B classification, she was not qualified.

Kratzer claims she did not train or pass the 408B test, because Rockwell impeded the interactive process when Bellendier demanded she take the 408B test on June 6, 2000, without an accommodation. The interactive process is informal and flexible, enabling both employer and employee to identify the employee's limitations and accommodations. **29 C.F.R. § 1630.2(o)(3).** If the employee needs an accommodation, the employer must engage in an interactive process. ***Burchett v. Target Corp.***, 340 F.3d 510, 517 (8th Cir. 2003). An employer impedes the process when: the employer knows of the employee's disability; the employee requests accommodations or assistance; the employer does not in good faith assist the employee in seeking accommodations; and the employee could have been reasonably accommodated but for the employer's lack of good faith. ***Ballard v. Rubin***, 284 F.3d 957, 960 (8th Cir. 2002), *quoting **Taylor v. Phoenixville Sch. Dist***., 174 F.3d 142, 165 (3d Cir. 1999).

Contrary to Kratzer's assertion, the breakdown in the interactive process was due to her failure to provide an updated evaluation, not Rockwell's refusal to provide an accommodation. The "predicate requirement" triggering the interactive process is the employee's request for the accommodation. ***Id.*** A mere assertion that an accommodation needed is insufficient; the employee must inform the employer of the accommodation needed. ***Mole v. Buckhorn Rubber Products, Inc.***, 165 F.3d 1212, 1217 (8th Cir. 1999); s*ee generally* **29 C.F.R. § 1630, App. § 1630.9.**

Rockwell and Kratzer agreed she would obtain an updated physical evaluation in order to determine the accommodation needed in the testing. Kratzer did schedule an appointment with her doctor, yet failed to go. By not obtaining the evaluation, Kratzer did not request accommodations beyond those documented in her file. Her statement that she wanted to see her doctor was insufficient; she needed to follow-up with the appointment. Without the updated evaluation, Rockwell could not provide an appropriate accommodation. Thus, Kratzer did not test and show her training for 408B, a prerequisite for the classification. An analysis of Rockwell's good faith is unnecessary as Kratzer failed to request an accommodation. *See Phoenixville Sch. Dist.*, 174 F.3d at 165.

Kratzer did not establish a prima facie case of disability discrimination, and summary judgment was thus proper.

## B. Sex Discrimination and Harassment

### i.

Plaintiffs may prove discrimination in Title VII claims in two ways: with direct evidence as in the *Price Waterhouse* approach, or with indirect evidence as in the *McDonnell Douglas* analysis. *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004). Kratzer may proceed under *Price Waterhouse* if she produces direct evidence of conduct or statements by persons involved in the decision-making process, which indicate a discriminatory attitude was more likely than not a motivating factor in the employer's decision. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989). If there is direct evidence of sex discrimination, the burden rests with the employer to show that it more likely than not would have made the same decision without consideration of the illegitimate factor. *Id.* Evidence of the employer's motives for the action, and whether the presence of a mixed motives

-6-

defeats the plaintiff's claim, is a trial issue, not intended for summary judgment. *Griffith*, 387 F.3d at 735.

Kratzer presented no direct evidence that Rockwell failed to test her based on gender. If a plaintiff lacks direct evidence, the *McDonnell Douglas* framework applies. *Id.* at 736; **McDonnell Douglas**, 411 U.S. at 792. The "*McDonnell Douglas* framework exists to provide discrimination plaintiffs a way to prove their case when they do not have 'explicit, inculpatory evidence of discriminatory intent.'" **Shannon v. Ford Motor Co.**, 72 F.3d 678, 682 (8th Cir. 1996), *quoting* **Hutson v. McDonnell Douglas Corp.**, 63 F.3d 771, 776 (8th Cir. 1995).

Under *McDonnell Douglas*, Kratzer must establish a prima facie case of sex discrimination. *Id.* at 682. She must show: membership in a protected group; qualification and application for an available position; rejection; and promotion of an employee similarly situated but not a member of the protected group. *Id.*, *citing* **Patterson v. McLean Credit Union**, 491 U.S. 164, 186-87 (1989). Once Kratzer makes a prima facie showing, Rockwell must proffer a legitimate, nondiscriminatory reason for the adverse action. *Id.* "This is a burden of production not proof. The defendant need not persuade the court, it must simply provide evidence sufficient to sustain a judgment in its favor." **Krenik v. County of Le Sueur**, 47 F.3d 953, 958 (8th Cir. 1995). If Rockwell meets its burden, Kratzer must establish that "the defendant's proffered reason is pretextual and that intentional discrimination was the true reason for the defendant's actions." *Id.*, *citing* **St. Mary's Honor Center v. Hicks**, 509 U.S. 502 (1993)).

The district court assumed Kratzer met her prima facie case, holding that there was a genuine issue of material fact as to whether she was qualified. Pursuant to *McDonnell Douglas*, the court then focused on Rockwell's reason for not testing Kratzer, concluding it was nondiscriminatory. The district court determined Kratzer failed to rebut the reason as pretextual.

The district court did not need to apply the full burden-shifting analysis of *McDonnell Douglas*. *See Habib*, 279 F.3d at 566 (summary judgment can be affirmed on any ground supported by the record). As discussed in the disability-discrimination section above, Kratzer did not make a prima facie case that she was qualified. Likewise, Kratzer did not make a prima facie case of sex discrimination because she was not qualified.

At the prima facie stage of a sex discrimination case, the employee must demonstrate objective qualifications. *Legrand v. Trustees of University of Arkansas at Pine Bluff*, 821 F.2d 478, 481 (8th Cir. 1987). An employee must show that her qualifications are equivalent to the minimum objective criteria. *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 575 (6th Cir. 2003). The threshold criteria are the plaintiff's physical ability, education, experience in the relevant industry, and the required general skills. *Whitley v. Peer Review Systems, Inc.*, 221 F.3d 1053, 1055 (8th Cir. 2000) (physical ability); *Wexler*, 317 F.3d at 576 (education, experience, and general skills). These qualifications are demonstrated when the employee "actually performs her job at a level that [meets her] employer's legitimate expectations." *Whitley*, 221 F.3d at 1055; s*ee also Miller v. Citizens Sec. Group*, 116 F.3d 343, 346 (8th Cir. 1997).

Kratzer was not qualified, as she could not objectively perform the functions of the 408B test. Aside from education, the minimum objective criteria requires the physical ability to train and perform the 408B test. There is no dispute that Kratzer could not physically accomplish the 408B test. Kratzer failed to demonstrate that she was objectively qualified.

Kratzer asserts she satisfied the prima facie burden by reiterating that but for Rockwell's refusal to give her the accommodation, she was qualified. While the district court (inconsistently) indulged this assertion for purposes of the sex discrimination claim, this court finds the argument ineffective. Kratzer presented

insufficient evidence that she was denied taking the 408B test due to her sex. When asked whether gender was the reason Rockwell refused to allow her to test for 408B, Kratzer responded, "I was not allowed to continue my test because the machines were not fixed, modified for me." She did not state that Rockwell refused to test her or modify the machines because of her gender. Kratzer's conclusory allegations, are insufficient to satisfy a prima facie case. *See Helfter v. United Parcel Service, Inc.*, 115 F.3d 613, 616 (8th Cir. 1997).

ii.

Kratzer also asserts Rockwell fostered a hostile work environment. To establish a prima facie case of sexual harassment, Kratzer must show: membership in a protected group; unwelcome harassment; harassment was based on sex; the harassment affected a term, condition, or privilege of employment; and Rockwell knew or should have known of the harassment and failed to take proper remedial action. *Erenberg v. Methodist Hosp.*, 357 F.3d 787, 792 (8th Cir. 2004).

At issue here is the fourth element – whether the complained-of conduct altered a term, condition, or privilege of her employment. This is a twofold inquiry. First, the harassment must be sufficiently severe or pervasive to create an "objectively hostile" work environment. *Henthorn v. Capitol Communications, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004). It must be more than merely offensive, immature or unprofessional; it must be extreme. *Id.* at 1027, *citing Alagna v. Smithville R-II Sch. Dist.*, 324 F.3d 975, 980 (8th Cir. 2003). Conduct that does not exceed the threshold of severity is insufficient to create a prima facie case of sexual harassment. "Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace." *Scusa v. Nestle U.S.A. Co., Inc.*, 181 F.3d 958, 967 (8th Cir. 1999). Second, if the victim does not subjectively perceive the environment as abusive, then the conduct has not altered the conditions of employment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993).

Kratzer's hostile work environment claim fails because she stated that she did not subjectively feel harassed. Though Kratzer cited several instances of offensive conduct - - male employees made derogatory comments; she was called "bitch" and "whore;" men received preferable treatment; and male workers stared at the females while they worked - - an employee's admission that it was not abusive is fatal to the employee's Title VII sexual harassment claim. *Montandon v. Farmland Ind., Inc.*, 116 F.3d 355 (8th Cir. 1997); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (summary judgment affirmed where plaintiff "conceded that [the employer's conduct] did not bother or upset her"). Kratzer asserts that derogatory comments were made about her. When questioned whether she heard them, she replied, "They would never bring it to me because they know I'm a stronger person and I wouldn't stand there and tolerate anybody - - male, female - - calling me a name." Kratzer stated a female co-worker told her about the comments two months after they occurred and Kratzer did not feel harassed.

As Kratzer did not subjectively believe that her working conditions were altered, she did not establish a prima facie case of hostile work environment; thus summary judgment was proper.

C. Retaliation

The *McDonnell Douglas* framework governs the order and allocation of proof for retaliation claims. *Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir. 1980), *citing McDonnell Douglas*, 411 U.S. at 802-04. To establish a prima facie case, Kratzer must show: a statutorily protected activity; an adverse employment action; and a causal connection between the two. *Manning v. Metro. Life Ins. Co., Inc.*, 127 F.3d 686, 692 (8th Cir. 1997). Once the prima facie case is made, Rockwell must articulate a legitimate, nondiscriminatory reason for its actions. *Womack,* 619 F.2d at 1296. Rockwell need not prove the absence of retaliatory motive, only enough to

-10-

dispel the inference of retaliation. *Id.* The burden then shifts to Kratzer to establish that the alleged legitimate, nondiscriminatory reason for dismissal was a pretext. *Id.*

Kratzer has not established a prima facie case of retaliation. She engaged in a statutorily protected activity – filing a complaint with the Iowa Civil Rights Commission in September 2000. There is, however, no evidence Rockwell took adverse employment actions due to the complaint. Kratzer asserts two claims of adverse employment action: refusal to test her for the 408B classification, and an offer to test in return for dropping the ICRA complaint. Kratzer does not directly allege that the reduction-in-workforce was retaliatory, but rather that her demotion was a result of Rockwell's decision not to test her for 408B, a classification exempt from the workforce reduction in 2000.

Neither of Kratzer's claims demonstrates an adverse employment action. First, Kratzer presented no evidence that Rockwell's refusal to test was related to her ICRA complaint, rather than her failure to provide the updated evaluation. Second, Rockwell made a settlement offer, the opportunity to test in exchange for dismissing the ICRA complaint. Generally, evidence of an offer of "valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible. . . ." **Fed. R. Evid. 408.** Rockwell's proposal was an offer of valuable consideration, the opportunity to train and test, in order to settle a disputed claim. Contrary to Kratzer's assertion, her IBEW membership did not entitle her to test for 408B, as she was not qualified nor had the 407B classification at the time of the settlement discussion. Kratzer did not establish a prima facie case of retaliation.

## D. State Claim

Because the Iowa Civil Rights Act mirrors federal law, the analysis above also disposes of the ICRA claims.  *Mercer v. City of Cedar Rapids*, 308 F.3d 840, 845 (8th Cir. 2002); s*ee also* **Hulme v. Barrett**, 449 N.W.2d 629, 631 (Iowa 1989).

## III.

Kratzer did not establish a prima facie case of disability or gender discrimination, as she was not qualified.  Her hostile work environment fails, because she admitted the co-employees' conduct was not subjectively severe.  Kratzer's retaliation claim also fails, as there was no evidence of adverse employment actions casually related to her ICRA claim.  The district court is affirmed.

_____