# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2156

_____

| | | |
|---|---|---|
| Randolph C. Fletcher;<br>Sheila A. Fletcher, | * | |
| | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Burlington Northern and Santa<br>Fe Railway Company; City<br>of Carl Junction;<br>James J. Wisdom, | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| Defendants - Appellees, | * | Appeals from the United States |
| | * | District Court for the |
| Doe Insurance Company, | * | Western District of Missouri. |
| | * | |
| Defendant, | * | |
| | * | |
| Joplin Trail Coalition, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

No. 06-2159

_____

| | |
|---|---|
| Jeff Lundein; Elizabeth Lundein, | * |
| | * |
| Plaintiffs - Appellants, | * |
| Paul Hance; Kathleen Hance; | * |

Randolph C. Fletcher; Sheila     *
A. Fletcher; John C. Warner;     *
Beverly G. Warner; John Fredrickson;     *
Shirley Sue Fredrickson; Clayton     *
A. Crosby; Carl Junction R-1,     *
    *
        Plaintiffs,     *
    *
     v.     *
    *
Burlington Northern and Sante     *
Fe Railway Company;     *
James J. Wisdom; City of     *
Carl Junction, Missouri;     *
    *
        Defendants - Appellees,     *
    *
Joplin Trail Coalition,     *
    *
     Intervenor Defendant - Appellee,     *

      _____

      No. 06-2162

      _____

John Fredrickson; Shirley Sue     *
Fredrickson; Stephen Fredrickson;     *
Tami Fredrickson,     *
    *
        Plaintiffs - Appellants,     *
    *
     v.     *
    *
Burlington Northern and Santa     *
Fe Railway Company; City of     *
Carl Junction; James J. Wisdom,     *

|                              |   |
|------------------------------|---|
|                              | * |
| Defendants - Appellees,      | * |
|                              | * |
| Doe Insurance Company,       | * |
|                              | * |
| Defendant,                   | * |
|                              | * |
| Joplin Trail Coalition,      | * |
|                              | * |
| Defendant - Appellee.        | * |

_____

No. 06-2164

_____

|                              |   |
|------------------------------|---|
| Carl Junction R-1,           | * |
|                              | * |
| Plaintiff - Appellant,       | * |
|                              | * |
| v.                           | * |
|                              | * |
| Burlington Northern and Santa | * |
| Fe Railway Company; Joplin   | * |
| Trail Coalition,             | * |
|                              | * |
| Defendants - Appellees.      | * |

_____

Submitted: November 17, 2006
Filed: January 26, 2007

_____

Before MURPHY, ARNOLD, AND BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

The Burlington Northern Santa Fe Railway Company (BNSF) agreed with the Joplin Trail Coalition to convert a railroad right of way to trail use. Seven adjacent landowners initiated state court actions claiming that the railroad had abandoned the right of way and had failed to comply with statutory maintenance duties on their property; they seek declaratory relief and damages. Two of the seven also claim that the mayor of Carl Junction had improperly entered the town into negotiations to convert the right of way. The cases were consolidated after they were removed to federal court, and the district court[1] granted summary judgment to all defendants. The landowners appeal, and we affirm.

I.

These consolidated actions arose out of BNSF's intent to abandon a rail line and the decision of the Surface Transportation Board (Board) to cease the abandonment process and allow trail use of the line pursuant to the National Trails System Act, 16 U.S.C. § 1247(d). The Trails Act provides for a process known as railbanking as an alternative to complete abandonment of a rail line right of way. Congress created the process of railbanking to preserve, where possible, unused railroad rights of way for future rail service by temporarily converting the rights of way into recreational trails until they are again needed for rail purposes. Presault v. Interstate Commerce Comm'n, 494 U.S. 1, 5-7 (1990). The Act permits the Board to halt abandonment proceedings if a railroad agrees to negotiate with a potential trail operator by issuing a Notice of Interim Trail Use (NITU). 49 C.F.R. § 1152.29; Caldwell v. United States, 391 F.3d 1226, 1229 (Fed. Cir. 2004). If the railroad and the trail operator reach an agreement prior to the expiration of the NITU, the NITU extends indefinitely, the right

---

[1] The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

of way is railbanked, and the trail operator is permitted to use the right of way for trail purposes. Id.

BNSF filed notice with the Board on May 3, 2002 of its intent to abandon and discontinue service over a 28 mile railroad line in Eastern Kansas and Southern Missouri. BNSF also sought to expedite the abandonment by filing an exemption from formal proceedings. Because the line had not been used in over two years, see 49 C.F.R. § 1152.50(b), the Board exempted BNSF from the formal procedures and the abandonment was scheduled to become effective on June 22, 2002.

On May 10, the Joplin Trail Coalition (Coalition) and the City of Carl Junction filed "statements of willingness" with the Board, seeking a NITU to allow them to continue negotiating with BNSF to convert the right of way for trail use instead of abandoning it. The statements of willingness provided that the Coalition and the city were "willing to assume full responsibility" for the management of the trail and any liability arising out of the right of way.

BNSF agreed to negotiate, and the Board issued a NITU on June 21, 2002, which suspended the abandonment process. This gave all interested parties the opportunity to negotiate with BNSF about whether it would be willing to let the right of way be maintained for public use instead of abandoning it. If the parties could reach an agreement, the NITU would permit an indefinite period of public use without BNSF being considered as having abandoned its interest. During this period the NITU directed that BNSF was to "limit activities to the right-of-way" and "keep intact the right-of-way underlying the tracks, including bridges, trestles, culverts and tunnels." Before the NITU expired, BNSF and the Coalition reached an "interim trail use/railbanking and donation agreement" and BNSF donated its interest in the right of way to the Coalition as trail operator by signing a quitclaim deed in September 2003.

Four months after the NITU had been issued, Jeff and Elizabeth Lundien, owners of land adjacent to the right of way, wrote to BNSF requesting that it comply with its statutory duties to clear brush along the right of way and to maintain fences alongside it.[2] See Mo. Rev. Stat. §§ 389.650; 655. BNSF responded two weeks later in a letter informing the Lundiens that it had not used the rail line for over two years, that the need for maintaining fences and the right of way ceased when it stopped using the line, and that it had begun the formal abandonment process on May 3, 2002 by filing its notice of abandonment with the Board.

The Lundiens brought this action in state court against BNSF eight days after they received its response to their maintenance request. The Lundiens request that the court declare them owners of the portion of the right of way adjacent to their property, arguing that BNSF's use of the right of way was only valid as long as the land was being used for railroad purposes. The Lundiens also seek statutory damages for BNSF's failure to comply with its legal duties. BNSF responded to their complaint by raising federal preemption and removed the case to federal court on November 27, 2002.

Nearly one year later, the district court consolidated the case with others brought by the Fletchers, Fredricksons, Warners, Crosbys, Hances, and the Carl Junction R-1 School District, all adjoining landowners to the right of way. The relief sought in these cases is identical except for additional claims brought by the Fletchers and Fredricksons against the City of Carl Junction and its mayor, James Wisdom.[3] They seek a writ of mandamus ordering the mayor to withdraw from all proceedings

---

[2] According to counsel, the fences had been damaged by a tornado.

[3] The record indicates that the school district only sought ownership over the right of way in a quiet title count and not statutory damages.

before the Board and to reimburse the city for any legal fees it has incurred in the process and damages for breach of the mayor's performance bond.[4]

The Coalition, as trail operator and owner of the right of way, moved to intervene; its motion was granted on February 27, 2004. That same day, the district court dismissed the quiet title claims without prejudice on the theory that it lacked subject matter jurisdiction over them because they were attacks on a final order of the board, citing <u>Grantwood Village v. Mo. Pac. R.R.</u>, 95 F.3d 654, 657 (8th Cir. 1996).[5] The Coalition then filed for summary judgment. The city and Mayor Wisdom also moved for summary judgment on the grounds that the plaintiffs had not alleged an injury, relying on affidavits that the city had not incurred any legal fees when it appeared before the Board. The plaintiffs resisted the Coalition's summary judgment motion and filed their own motion for summary judgment against the city and mayor. BNSF also moved for summary judgment at the motion hearing on December 9, 2005.

The court granted summary judgment to all of the defendants, concluding that the railroad's duties to the adjacent landowners ceased when the Coalition took possession of the right of way and that plaintiffs lacked standing to pursue claims against the city and mayor. The Fletchers, Lundiens, and Fredricksons appeal the dismissal of their claims other than the dismissal of their quiet title cause of action.

---

[4] They claim that the mayor entered the city into negotiations about the right of way without authorization from the Board of Aldermen.

[5] After their quiet title claims were dismissed, the plaintiffs filed condemnation actions against the United States in the Court of Federal Claims. <u>Carl Junction R-1 School District v. United States</u>, No. 05-3L; <u>Hance v. United States</u>, No. 05-4L. Those claims are still pending.

II.

We review a grant of summary judgment de novo, using the same standard as the district court. Bunch v. Canton Marine Towing Co., 419 F.3d 868, 870 (8th Cir.2005). We view the evidence in the light most favorable to the non moving party and grant summary judgment if there is no issue of material fact and the moving party is entitled to judgment as a matter of law. Lund v. Hennepin County, 427 F.3d 1123, 1125 (8th Cir. 2005).

Appellants claim that BNSF is liable for violating its statutory duties to clear brush alongside the right of way and to maintain fences adjacent to it and that they are entitled to damages because the Mayor lacked authorization to enter the city into proceedings before the Board. BNSF responds that summary judgment was appropriate because plaintiffs' claims are preempted, its duties to maintain the right of way ceased when it filed with the Board its notice of intent to abandon the right of way, and plaintiffs have not shown damages. Mayor Wisdom and the city assert that summary judgment was proper as to them because the city never incurred expenses during the Board proceedings and the mandamus request is moot because the city did not enter into any agreement with BNSF.

A.

Appellants allege that BNSF is liable for failing to comply with the statutory responsibilities found in Chapter 389 of the Missouri Revised Statutes, entitled "Regulation of Railroad Corporations." The first of these statutes, Mo. Rev. Stat. § 389.650, requires "any railroad corporation running or operating any railroad in this state" to "erect and maintain" fences, gates, and cattle guards on the "side of the road where the same passes through." Section 389.665 requires corporations "owning or operating any railroad" to "keep the right of way reasonably clear of brush and high weeds" for the purpose of preventing the spread of fire. At this stage we construe the

facts in the light most favorable to the non moving party and assume for summary judgment purposes that maintenance on the right of way and fence repair was needed. Hinshaw v. Smith, 436 F.3d 997, 1004 (8th Cir. 2006).

The statutes do not require a railroad to perform maintenance until the landowners provide notice of the need for it. See Mo. Rev. Stat. §§ 389.650(3) (requiring at least five days notice); 389.665(1) (requiring at least three days notice). In this case it is undisputed that appellants did not give BNSF notice of the need for maintenance prior to issuance of the NITU. As a result, summary judgment would have been appropriate if issuance of the NITU preempted BNSF's state law responsibilities. Preemption, which is grounded in the Supremacy Clause of the Constitution, U.S. Const. Art. VI, requires that a state law "give way" when it "conflicts with or frustrates federal law." Chapman v. Lab One, 390 F.3d 620, 624 (8th Cir. 2004). A state law is preempted if (1) Congress explicitly prohibits state regulation in an area; (2) Congress implicitly prohibits state regulation by pervasively occupying the area; (3) state law directly conflicts with federal law; or (4) a federal agency, acting within the scope of its delegated authority, intends its regulations to have preemptive effect. Noe v. Henderson, 456 F.3d 868, 870 (8th Cir. 2006).

We need not reach the question of preemption in this case, however. The statutes by their own terms do not apply to a rail line after a NITU has been issued and a right of way has been dedicated to trail use. See United States v. Allen, 406 F.3d 940, 946 (8th Cir. 2005) ("[W]e choose the narrowest ground [on which to decide a case] in order to avoid unnecessary adjudication of constitutional issues"). The statutory maintenance duties of railroads in Missouri extend only to railroad companies "running or operating any railroad" or "owning or operating" a railroad right of way. See Mo. Rev. Code §§ 389.650; 655. At the time BNSF received notice of the need for repairs, the right of way had not been used for rail purposes in over two years and would have been abandoned had the NITU not been issued. The NITU halted the abandonment proceedings, authorized railbanking of the right of way, and

converted the right of way to recreational uses. Appellants err in contending that the NITU extend the amount of time for which BNSF remained responsible for complying with statutory responsibilities of railroads. Because the NITU converted the right of way to public uses, BNSF was no longer "running or operating any railroad" nor "owning or operating" a railroad right of way when it received the notice required by statute. We affirm the award of summary judgment in favor of BNSF on this basis. Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1043 (8th Cir.2005) ("This court may affirm a grant of summary judgment on any ground supported by the record, even if not relied upon by the district court").

B.

The Fletchers and Fredricksons also appeal the judgment entered in favor of the city and Mayor Wisdom, arguing that the mayor lacked authority to enter the city into proceedings before the Board. They request that a writ of mandamus be issued ordering that the city withdraw from all proceedings before the Board and that Mayor Wisdom reimburse the city for the legal expenses incurred in those proceedings as well as the current litigation. The city and mayor assert that summary judgment in their favor would be appropriate because of the facts that the plaintiffs lack standing to assert damages on behalf of the city, that plaintiffs fail to demonstrate how they were injured by Mayor Wisdom's action, and that subsequent events have made the plaintiffs' request for mandamus moot.

It is unnecessary to reach the merits of these appellants' contentions. They failed to rebut affidavits supplied by the city and mayor stating that the municipality did not incur any expenses from its involvement in the Board proceedings and have not cited any authority for their novel argument that the fees the city continues to incur in defending here constitute a cognizable injury to them. As a result, plaintiffs have failed to demonstrate an injury attributable to the mayor's actions and lack standing to pursue these claims. See Advantage Media, L.L.C. v. City of Eden Prairie,

456 F.3d 793, 798-99 (8th Cir. 2006).   They also seek an order directing the city to withdraw from Board proceedings, but the city is no longer part of such proceedings and ownership of the right of way has passed to the Coalition.  Because the mandamus order they seek could not constitute "effective relief,"  Beck v. Mo. State High Sch. Activities Ass'n, 18 F.3d 604, 605 (8th Cir. 1994), this request was properly dismissed as moot.

## III.

For the reasons stated, we affirm the judgments of the district court.[6]

_____

---

[6] Because of this disposition, we dismiss as moot the Coalition's motion for summary dismissal of the appeals as to it or for voluntary dismissal to avoid damages and double costs for frivolous appeals.  The Coalition remains free to request costs in a separate motion. See Fed. R. App. P. 38.