# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2874

_____

| | | |
|---|---|---|
| Equal Employment Opportunity Commission, | * * * | |
| Appellee, | * * | |
| Ahmet Yigit Demirelli, | * * | |
| Intervenor - Appellee, | * * | |
| v. | * * * | Appeal from the United States District Court for the Eastern District of Missouri. |
| Convergys Customer Management Group, Inc., | * * * | |
| Appellant. | * | |

_____

Submitted: March 15, 2007
Filed: July 6, 2007

_____

Before MELLOY, SMITH, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Plaintiff Equal Employment Opportunity Commission (EEOC) and plaintiff-intervenor Ahmet Yigit Demirelli sought relief against Demirelli's former employer, Convergys Customer Management Group, Inc. ("Convergys"), alleging that Convergys failed to accommodate Demirelli's disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(a). A jury found for the plaintiffs,

awarding Demirelli lost wages and compensatory damages. The district court[1] denied Convergys's motions for judgment as a matter of law and for remittur. Convergys appeals. We affirm.

## I. *Background*

Convergys provides customer-service assistance on behalf of corporate clients. In January 2001, Convergys hired Demirelli as a call representative. Demirelli, confined to a wheelchair due to a rare condition commonly known as brittle bone disease, answered telephone calls from customers of Convergys's clients.

To keep its call stations consistently attended, Convergys maintains a strict tardy policy. Convergys penalizes employees who are more than three minutes late either reporting for work at the company's call center or returning from their 30-minute lunch break. Employees with 14 or more violations in a single year could be disciplined. Potential sanctions range from a written warning to termination of employment.

For the first year of his employment, Demirelli often reported for work and returned from lunch late. Records show that Demirelli was late reporting for work 37 times and late returning from lunch 65 times—far in excess of Convergys's 14 tardy allowance. Demirelli's tardiness reporting to work stemmed from the lack of adequate handicapped parking at Convergys's call center. The call center's large parking area only had two van-accessible, handicapped parking spaces—spaces large enough for a special-needs van to operate a ramp or motorized lift. These two spaces were usually occupied when Demirelli arrived, thus causing him to either wait for the space to become unoccupied or find an alternative parking space.

---

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

Demirelli made unsuccessful efforts to reduce his tardiness for work. Specifically, Demirelli tried arriving at work earlier—at one point arriving nearly an hour early— however, the two parking spots were still usually occupied. Demirelli then began parking at a nearby movie theater, but traveling via wheelchair from the theater's parking lot to the call center took over 10 minutes and caused Demirelli considerable physical pain. Finally, Demirelli requested different hours hoping that one of the two special-needs parking spaces might be available at a later hour. But even during a later work-shift, the two special-needs spots were still occasionally occupied.

Demirelli's condition and the layout of Convergys's call center hampered an on-time lunch return. Convergys's call center is a maze of hundreds of cubicles where individual call representatives answer customer calls. Cubicles are not assigned to specific call representatives; when call representatives report for work or return from lunch, they claim the first cubicle that they can find. Most employees simply look over the top of the rows of cubicles to find an available workstation. However, this option was not available to the wheelchair-confined Demirelli. He was forced to examine each workstation. This time-consuming exercise was exacerbated by narrow aisles, making it difficult for Demirelli to navigate obstacles such as stray chairs or chatting colleagues. His search was further complicated by the fact that not every workstation was fully operational; occasionally, a workstation would be available but missing a headset or other necessary equipment.

Initially, Demirelli's supervisor reserved a workstation for him. However, after a few months, Demirelli's supervisor was replaced. His new supervisor refused to reserve a workstation for him. A few months before his termination, Demirelli began seating himself at workstations reserved for training. His supervisors expressed their displeasure with him sitting there but did not require him to move. When his supervisors approached him to discuss his tardies, Demirelli explained that he was having problems finding a parking space and a workstation. He asked that he be given

"a grace period"—a few extra minutes to return from lunch to work. Convergys denied this request. On June 27, 2002, Convergys terminated Demirelli's employment.

Demirelli filed a timely claim with the EEOC, which in turn brought this enforcement action pursuant to its authority under 42 U.S.C. §§ 2000e-5(f)(1) and (3). Demirelli intervened as a plaintiff pursuant to § 2000e-5(f)(1). The matter proceeded to trial, and a jury found for the plaintiffs, awarding Demirelli $14,265.22 in lost wages and $100,000 in other compensatory damages.

## II. *Discussion*

Convergys appeals the district court's denial of its motion for judgment as a matter of law, averring that it cannot be held liable for failure to accommodate Demirelli because he did not request a specific, reasonable accommodation. In the alternative, Convergys avers that Demirelli's proposed accommodations were unreasonable.[2] Convergys also challenges the award and amount of compensatory damages.

### A. *Judgment as a Matter of Law*

We review de novo the denial of a motion for judgment as a matter of law. *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 (8th Cir. 2000). In order to prevail on a claim of discrimination under the ADA, Demirelli must prove, *inter alia*, that he was qualified to perform the essential functions of his job, with or without accommodation. *Land v. Washington County, Minn.*, 243 F.3d 1093, 1095 (8th Cir.

---

[2]Convergys also argues, citing *Egbuna v. Time-Life Libraries,* Inc., 153 F.3d 184 (4th Cir. 1998) (en banc), that Demirelli, a Turkish immigrant, was an unauthorized immigrant worker and thus not entitled to relief under the ADA. The record is clear, however, that for the period that Demirelli claims damages, he was authorized by the Department of Homeland Security to work in the United States. We therefore reject Convergys's claims without deciding whether unauthorized workers are entitled to relief under the ADA.

2001). Determination of whether a disabled employee is qualified to perform an essential function of the job is a two-fold inquiry, asking: (1) whether the employee meets the necessary prerequisites for the job, such as education, experience, and training and (2) whether the employee can perform the essential job functions, with or without reasonable accommodation. *Id.*

## 1. *The Interactive Process*

Convergys avers that, as a matter of law, an employer cannot be held liable for failing to accommodate a disabled employee who has not requested a specific, reasonable accommodation. Similarly, Convergys avers that the district court erred when it declined to instruct the jury that Demirelli was required to request a specific accommodation. We hold that the district court did not err.

Our case law has established a shared responsibility between employers and employees to resolve accommodation requests. A disabled employee must initiate the accommodation-seeking process by making his employer aware of the need for an accommodation. *Cannice v. Norwest Bank Iowa N.A.*, 189 F.3d 723, 726 (8th Cir. 1999). Additionally, the employee must provide relevant details of his disability and, if not obvious, the reason that his disability requires an accommodation. *Miller v. Nat'l Cas. Co.*, 61 F.3d 627, 630 (8th Cir. 1995).

Once the employer is made aware of the legitimate need for an accommodation, the employer must "make a reasonable effort to determine the appropriate accommodation." *Cannice*, 189 F.3d at 727 (internal citation and quotation omitted). "This means that the employer should first analyze the relevant job and the specific limitations imposed by the disability and then, in consultation with the individual, identify potential effective accommodations." *Id; see also Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 954 (8th Cir. 1999) (stating that employers are required to "make a good faith effort to seek accommodations"). This division of responsibility is "only logical, as an employee will typically have better access to information

-5-

concerning his limitations and abilities whereas an employer will typically have better access to information regarding possible alternative duties or positions available to the disabled employee." *Rizzo v. Children's World Learning Ctr., Inc.*, 173 F.3d 254, 266 (5th Cir. 1999).

Demirelli testified at trial that he requested an accommodation because of limitations created by his wheelchair, thus meeting his initial burden. The record does not show, however, that Convergys fulfilled its obligation to explore possible accommodations for Demirelli's disability. In fact, the record evidence shows that Demirelli assumed Convergys's responsibility by offering several potential accommodations, including a few extra minutes to return from lunch. Demirelli thus exceeded what disabled employees at the initial stage of the interactive process must do. Convergys's argument thus attempts to place the entire responsibility of fashioning an accommodation upon Demirelli.

Convergys points to *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040 (8th Cir. 2005), to support its proposition that a disabled employee must request a specific reasonable accommodation. In that case, Kratzer, a disabled employee, needed to prove her proficiency with four-different types of machines in order to receive a promotion. *Id.* at 1044. However, her disability prevented her from sitting in front of the machines for the full amount of time necessary to demonstrate her proficiency. *Id.* Both Kratzer and her employer started the interactive process to find a reasonable accommodation that would allow Kratzer to use the machines and demonstrate her proficiency. *Id.* at 1045. As a part of this interactive process, Kratzer agreed to undergo a medical evaluation that would provide her employer with information necessary to fashion a proper accommodation. *Id.* However, Kratzer did not provide the necessary medical information. *Id.* After being denied the promotion, Kratzer sued, alleging that her employer failed to accommodate her disability. We held that Kratzer failed to fulfill her responsibility in the interactive process when she failed to provide information necessary for her employer to fashion an appropriate

accommodation. *Id.* ("The breakdown in the interactive process was due to her failure to provide an updated evaluation, not Rockwell's refusal to provide an accommodation."). In the present case, there is no dispute that Demirelli provided Convergys with all of the information relevant to his disability and the disability's affect on his job performance.

We hold that Demirelli was not required to more specifically request accommodation. Accordingly, the district court did not err by denying Convergys's motion for judgment as a matter of law. Similarly, the district court did not err by declining to instruct the jury that Demirelli was required to request a specific accommodation.

### 2. *Reasonable Accommodation*

Convergys avers that any accommodation that provided Demirelli with extra time was unreasonable because it required Convergys to eliminate the essential punctuality requirement. We disagree. There is no precise test for what constitutes a reasonable accommodation, but an accommodation is unreasonable if it requires the employer to eliminate an essential function of the job. *Buckles v. First Data Res., Inc.*, 176 F.3d 1098, 1102 (8th Cir. 1999); *Dropinski v. Douglas County, Neb.*, 298 F.3d 704, 709 (8th Cir. 2002). Whether an accommodation is reasonable is a question of fact to be decided by a jury. *Fjellestad*, 188 F.3d at 957; *Jankowski Lee & Assoc. v. Cisneros*, 91 F.3d 891, 896 (7th Cir. 1996).

The district court determined that punctuality is an essential job function. In order to fulfil this essential job function, the record evidence is clear that Demirelli requested an extra 15 minutes to return from his lunch break.[3] Viewing the evidence

---

[3]Although an assigned parking place and workspace are other potential accommodations, the parties, at trial and oral argument, relied upon Demirelli's request for extra time as the reasonable accommodation that Convergys should have provided. Therefore, it is the only accommodation that we consider.

in a light most favorable to the jury verdict, we believe that an extra 15 minutes is a reasonable accommodation. First, Convergys puts forth no evidence showing that extending Demirelli's lunch break by 15 minutes would eliminate its punctuality requirement. An additional 15 minutes would merely create a different time for Demirelli to return from his lunch break. Contrary to Convergys's assertion, this modified work schedule would not create an open-ended schedule where Demirelli would be free to return from lunch at his pleasure or at unpredictable times. Second, the record evidence also shows that by granting Demirelli an extra 15 minutes, 62 of Demirelli's 65 lunch tardies would have been eliminated. Lastly, the ADA itself recognizes extra time as a reasonable accommodation. "[R]easonable accommodation may include . . . job restructuring; part-time or *modified work schedules*." 42 U.S.C. § 12111(9)(B) (emphasis added); *see also* 29 C.F.R. § 1630.2.

Accordingly, we believe that there is sufficient evidence to support the jury's conclusion that the accommodations proposed by Demirelli were reasonable.

B. *Damages*

Convergys avers that the district court erred by permitting the jury to award Demirelli $100,000 in compensatory damages and erred by denying its motion for remittur.

1. *Compensatory Damages*

A plaintiff may seek compensatory damages under the ADA for emotional distress. *Foster v. Time Warner Entm't Co.*, 250 F.3d 1189, 1196 (8th Cir. 2001) (internal citations and quotations omitted). While compensatory damages for emotional distress must be supported by competent evidence of genuine injury, a jury may award such damages based solely upon a plaintiff's testimony. *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002); *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 893 (8th Cir. 2000). However, an employer can avoid paying compensatory damages if the employer shows that it acted in good faith, working "in

consultation with the person with the disability who has informed the [employer] that accommodation is needed, to identify and make a reasonable accommodation . . . ." 42 U.S.C. § 1981a(a)(3).

The record evidence shows that Demirelli suffered significant emotional injuries as a result of his wrongful termination. Demirelli testified that the termination caused him severe depression and anxiety. That, as a result of the depression, he became isolated, ashamed, and gained a significant amount of weight. Convergys does not dispute this evidence but merely argues that it acted in good faith.

Whether Convergys acted in good faith is a question for the jury in which Convergys bears the burden of proof. *Landrum v. Moats*, 576 F.2d 1320, 1329 (8th Cir. 1978). "[T]he failure of an employer to engage in an interactive process to determine whether reasonable accommodations are possible is prima facie evidence that the employer may be acting in bad faith." *Fjellestad*, 188 F.3d at 952. As we have already concluded that Convergys failed to engage in the interactive process, we also conclude that a reasonable jury could find that Convergys did not act in good faith to make a reasonable accommodation. Prudent management decisions and common courtesy among co-workers may well have avoided this claim in its entirety but it cannot now be avoided by factual assertions reasonably resolved to the contrary by the jury.

## 2. *Remittur*

We review the denial of remittur for abuse of discretion and "will grant a remittur only in cases where the jury's award is so grossly excessive as to shock the court's conscience." *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 496 (8th Cir. 2002) (internal quotation and citation omitted). "Our scope of review over a damage award is extremely narrow." *Peoples Bank and Trust Co. of Mountain Home v. Globe Intern. Pub., Inc.*, 978 F.2d 1065, 1070 (8th Cir. 1992). "We review this award with

a keen sense of respect for the latitude given to juries." *Kucia v. Southeast Ark. Comm. Action Corp.*, 284 F.3d 944, 948 (8th Cir. 2002).

We vest with the jury the responsibility of quantifying emotional damages because the jury has the "benefit of observation of plaintiff in considering and determining a fair allowance for her emotional distress and humiliation." *Block v. R.H. Macy & Co., Inc.*, 712 F.2d 1241, 1245 (8th Cir. 1983). "[I]t is well settled that awards for pain and suffering are highly subjective and should be committed to the sound discretion of the jury, especially when the jury is being asked to determine injuries not easily calculated in economic terms." *Frazier v. Iowa Beef Processors, Inc.*, 200 F.3d 1190, 1193 (8th Cir. 2000).

Convergys offers no convincing evidence that the jury's award of $100,000 for emotional damages shocks the conscience. Based upon the record evidence, we cannot say that the district court abused its discretion by denying Convergys's motion for a remittur.

### III. *Conclusion*

After a careful review of the record, the judgment of the district court is affirmed.

_____