# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1279
_____

Chris Schaffhauser

*Plaintiff - Appellant*

v.

United Parcel Service, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: June 10, 2015
Filed: July 23, 2015

_____

Before GRUENDER, MELLOY, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Christopher L. Schaffhauser challenges his demotion from manager to supervisor at United Parcel Services (UPS). Schaffhauser, a white male, alleges race discrimination under 42 U.S.C. § 1981; Title VII, 42 U.S.C. § 2000e *et seq*.; and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 *et seq*. (ACRA). He also

asserts failure to accommodate his medical condition under the ACRA and the ADA, 42 U.S.C. § 12101 *et seq.* The district court[1] granted summary judgment to UPS. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

Initially hired in 1987, Schaffhauser worked as a Plant Engineering Manager from January 1, 2007 to March 8, 2012. He received training on UPS's anti-harassment, anti-discrimination, and ADA policies. According to UPS's Professional Conduct and Anti-Harassment Policy:

> The Company prohibits unprofessional and discourteous actions, even if those actions do not constitute unlawful harassment.
> . . . .
> Accordingly, derogatory or other inappropriate remarks, slurs, threats or jokes will not be tolerated.
> . . . .
> Each employee must exercise his or her own good judgement [sic] to avoid engaging in conduct that may be perceived by others as harassment.

In February 2012, Schaffhauser was at work chatting with Neal L. Sharkey (an African-American manager), Quentin Goodwin (an African-American supervisor), and Harold A. Williams (an African-American supervisor). According to Schaffhauser, Goodwin said, "I wish Rodney Barefield would take a swing at me and I would knock that motherf**r out." Schaffhauser commented, "If he ever hit me, I would hit him back so hard it'd knock the black off him." He admits making the comment, that it could be racist, and that it was a mistake, but claims he was just joking and did not intend it to be racist.

---

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

In his report to the human resources director, Schaffhauser claimed that his medical condition was a "contributing factor in [his] poor choice of words." He asked that UPS consider his disability, give him "a vote of confidence," and keep him "in my current position." The human resources director demoted Schaffhauser from manager to supervisor.

Schaffhauser sued UPS, alleging reverse race discrimination and failure to accommodate a disability. The district court granted summary judgment to UPS.

The "court reviews de novo a grant of summary judgment." ***Torgerson v. City of Rochester***, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**. If the movant does so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," pointing to "specific facts showing that there is a genuine issue for trial." ***Torgerson***, 643 F.3d at 1042. If the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. ***Id.***

I.

Schaffhauser alleges race discrimination under Title VII, 42 U.S.C. § 1981, and the ACRA. Title VII prohibits an employer from discriminating against any individual "because of such individual's race." **42 U.S.C. § 2000e–2(a)(1)**. Race discrimination claims under all three statutes are evaluated identically. *See **Davis v. KARK-TV, Inc.***, 421 F.3d 699, 703 (8th Cir. 2005).

A plaintiff may defeat summary judgment by either offering direct evidence or creating an inference of unlawful discrimination. ***Torgerson***, 643 F.3d at 1044, *applying **McDonnell Douglas Corp. v. Green***, 411 U.S. 792 (1973).

A.

Direct evidence is "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Id.* "[S]tray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process" are not direct evidence. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 933 (8th Cir. 2006).

As direct evidence, Schaffhauser offers the human resources director's statements about a quid pro quo. After Schaffhauser's comment, Barefield filed grievances. The human resources director testified he thought the Union may have withdrawn or settled Barefield's grievances because UPS demoted Schaffhauser, but without contradiction by Schaffhauser, the human resources director said that he "had no conversations with the Union" about Schaffhauser's comment or demotion. Speculation about the Union's motive does not show a specific link between a discriminatory animus and Schaffhauser's demotion. The Union was not a decisionmaker, so its statements or motives are not direct evidence.

Schaffhauser also claims UPS failed to follow its Employment Dispute Resolution (EDR) process, which requires a human resources representative to meet informally with the employee. No human resources representative met informally with Schaffhauser, and UPS later denied a peer review. According to the record, the EDR administrator denied peer review without regard to race (since 2008, five African-Americans were denied peer review, as were five Caucasians and one Hispanic employee). More importantly, Schaffhauser testified he never heard anyone at UPS, including the human resources director, say anything negative about his race, nor does he argue that anyone there has a "discriminatory attitude" toward Caucasians. Schaffhauser has not identified direct evidence of discrimination.

B.

Under *McDonnell Douglas*, Schaffhauser must first establish a prima facie case of discrimination. **McDonnell Douglas**, 411 U.S. at 802. If he does, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. *See* **Davis v. Jefferson Hosp. Ass'n**, 685 F.3d 675, 681 (8th Cir. 2012). If the employer meets this burden, the "presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination." **Id.**

A prima facie case of discrimination requires that the plaintiff "(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) suffered under circumstances permitting an inference of discrimination." **Id.** In a reverse-racism case, the plaintiff must also show that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." **Hammer v. Ashcroft**, 383 F.3d 722, 724 (8th Cir. 2004).

Assuming Schaffhauser could establish a prima facie case, UPS must show a legitimate, nondiscriminatory reason for demoting him. **Davis**, 685 F.3d at 681. "This burden is not onerous." **Bone v. G4S Youth Servs., LLC**, 686 F.3d 948, 954 (8th Cir. 2012).

As its legitimate, nondiscriminatory reason to demote Schaffhauser, UPS relies on Schaffhauser's comment ("If he ever hit me, I would hit him back so hard it'd knock the black off him"). Even Schaffhauser agrees that the comment could be racist and violates UPS's Professional Conduct and Anti-Harassment Policy.

Schaffhauser stresses that he did not intend the comment to be racist, and was otherwise a model employee. He claims his demotion was disproportionate and

unfair. The question is not whether UPS made a good decision, or even a fair one. The question is whether it took an adverse employment action based on a discriminatory animus. Employee discipline, as long as it is not conducted in a discriminatory fashion, is a business judgment not reviewed by the courts. *See id.* at 955.

Because UPS articulates a legitimate, nondiscriminatory reason, the burden shifts to Schaffhauser to show that the "proffered justification is merely a pretext for discrimination." *Davis*, 685 F.3d at 681. "There are at least two ways a plaintiff may demonstrate a material question of fact regarding pretext." *Torgerson*, 643 F.3d at 1047. "A plaintiff may show that the employer's explanation is unworthy of credence . . . because it has no basis in fact. Alternatively, a plaintiff may show pretext by persuading the court that a [prohibited] reason more likely motivated the employer." *Id.* (alterations in original) (citations omitted) (internal quotation marks omitted). "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010).

Schaffhauser argues that UPS failed to follow its own EDR and Investigation guidelines. Specifically, he objects that although UPS interviewed many people, it did not fully investigate all relevant facts and information and did not complete a report with full analysis of all factual disputes and inconsistencies. Schaffhauser also complains that he was denied access to both an informal meeting and a peer review.

"Although an employer's violation of its own policies may be indicative of pretext, that is not always so." *Anderson v. Durham D&M, LLC*, 606 F.3d 513, 522 (8th Cir. 2010). Nothing in these facts show that UPS was more likely motivated by race than by its proffered justification. "An employer can certainly choose how to run its business, including not to follow its own personnel policies regarding termination

of an employee or handling claims of discrimination, as long as it does not unlawfully discriminate in doing so." ***McCullough v. Univ. of Ark. for Med. Scis.***, 559 F.3d 855, 863 (8th Cir. 2009). Even if the employer's acts are unfair, there has to be evidence connecting the unfairness to a discriminatory animus. Schaffhauser does not identify any such evidence.

Schaffhauser also claims that UPS treated similarly situated employees differently, showing a discriminatory animus. "At the pretext stage, the test for determining whether employees are similarly situated to a plaintiff is a rigorous one." ***Bone***, 686 F.3d at 956. A plaintiff "must show that [he] and the employees outside of [his] protected group were similarly situated in all relevant respects." ***Id.*** The potential comparators must " have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." ***Id.***

Schaffhauser offers as comparators Goodwin, Barefield, and six others. None is similarly situated. The six other comparators did not make comments that were racial in nature. Goodwin, Barefield, and one other employee were not managers when they made their comments, and thus their comments were not directed at a subordinate of another race.[2] Goodwin, Barefield, and the other employer were not "subject to the same standards," "engaged in the same conduct without any mitigating" circumstances, or "similarly situated in all relevant respects." *See **Id.***

---

[2]Schaffhauser claims Goodwin may have called Barefield a "black motherf\*\*r"—not just a "motherf\*\*r." Even if Goodwin said that, he was a supervisor (not a manager), and did not supervise Barefield. *See **Riser v. Target Corp.***, 458 F.3d 817, 822 (8th Cir. 2006) (co-workers are not similarly situated where, among other things, they have different management and job duties); ***Harvey v. Anheuser-Busch, Inc.***, 38 F.3d 968, 972 (8th Cir. 1994) (disparity in discipline warranted partly because one employee is subordinate to the other).

Finally, Schaffhauser says that a prohibited reason more likely motivated UPS. He again notes the human resources director's testimony that the Union may have withdrawn or settled Barefield's grievances because of Schaffhauser's demotion. Schaffhauser has to do more than claim "some metaphysical doubt as to the material facts"; he must point to "specific facts showing that there is a genuine issue for trial." *Torgerson*, 643 F.3d at 1042. No specific facts suggest that UPS's actions were more likely motivated by race than by its proffered justification.[3]

In short, Schaffhauser has not offered any "background circumstances" to show that UPS is "that unusual employer who discriminates against the majority." *Hammer,* 383 F.3d at 724. Yet even if he had, UPS offered a legitimate, nondiscriminatory reason for demoting Schaffhauser, and Schaffhauser has failed to establish a genuine issue of material fact that the reason is a pretext.

II.

Schaffhauser also asserts a failure-to-accommodate claim under the ADA and the ACRA. *See Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002) (explaining that courts use the same standards to evaluate claims brought under both statutes).

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and

---

[3]Schaffhauser alludes to a mixed-motive claim under 42 U.S.C. § 2000e-2(m) ("an unlawful employment practice is established when the complaining party demonstrates that race . . . was a motivating factor for any employment practice, even though other factors also motivated the practice"). Even under a mixed-motive analysis, the plaintiff "must initially present evidence, either direct or circumstantial, showing a specific link between the discriminatory animus and the challenged decision." *Philipp v. ANR Freight Sys.*, 61 F.3d 669, 673 (8th Cir. 1995).

other terms, conditions, and privileges of employment." **42 U.S.C. § 12112(a)**. This includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." **§ 12112(b)(5)(A)**.

Schaffhauser must establish both a prima facie case of discrimination based on disability and a failure to accommodate it. To establish a prima facie case of discrimination based on disability, Schaffhauser must show that he "(1) is disabled within the meaning of the ADA; (2) is a qualified individual under the ADA; and (3) has suffered an adverse employment decision because of the disability." *Kallail v. Alliant Energy Corp. Servs., Inc.*, 691 F.3d 925, 930 (8th Cir. 2012). To be considered disabled within the meaning of the ADA, Schaffhauser must show "a physical or mental impairment that substantially limits one or more major life activities." **42 U.S.C. § 12102(1)**.

Schaffhauser maintains that a steroid shot he received before his comment caused changes to his physical and neurological condition, including high blood pressure, mood swings, and increased irritability. He argues that this physical and mental impairment substantially limited a major life activity—interacting with others—and a major bodily function—his neurological system. *See* **29 C.F.R. § 1630.2(h)(i)**.

Assuming Schaffhauser has made a prima facie case, he must also establish a failure to accommodate his disability. "To determine whether an accommodation for the employee is necessary, and if so, what that accommodation might be, it is necessary for the employer and employee to engage in an 'interactive process.'" *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 902 (8th Cir. 2009). This interactive, accommodation-seeking process must be initiated by the disabled employee, who must alert his employer to the need for an accommodation and provide relevant details of his disability. *EEOC v. Convergys Customer Mgmt. Grp.*,

491 F.3d 790, 795 (8th Cir. 2007). To show that an employer did not engage in an interactive process, the employee must prove:

> 1) the employer knew about the employee's disability;
> 2) the employee requested accommodations or assistance for his or her disability;
> 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and
> 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Peyton*, 561 F.3d at 902.

Here, the third and fourth factors are not contested. What is contested is when and to what extent UPS knew that Schaffhauser had any sort of disability. Schaffhauser admitted at his deposition that he never requested a formal accommodation. Before his comment, Schaffhauser certainly did not inform his employer of the "relevant details" of his disability; the most he claims is that a human resources manager saw him take his blood pressure and that UPS knew he had been previously injured in an accident. Schaffhauser did not initiate the interactive process by giving his employer notice of his disability. *See Convergys Customer Mgmt. Grp.*, 491 F.3d at 795.

Schaffhauser asserts UPS knew of his disability because, after his comment, he stated that his medical condition was a "contributing factor in [his] poor choice of words," and requested that UPS "allow [him] to stay in [his] current position." This request, even if considered an accommodation request, was untimely because it came after Schaffhauser's comment. As the district court articulated, liability is not established where "an employee engages in misconduct, learns of an impending adverse employment action, and then informs his employer of a disability that is the supposed cause of the prior misconduct and requests an accommodation."

***Schaffhauser v. United Parcel Serv.***, 2014 WL 197684, at \*1, \*10 (E.D. Ark. Jan. 15, 2014). *See also **Hill v. Kansas City Area Transp. Auth.***, 181 F.3d 891, 894 (8th Cir. 1999); ***Jones v. Nationwide Life Ins. Co.***, 696 F.3d 78, 90 (1st Cir. 2012) ("When an employee requests an accommodation for the first time only after it becomes clear that an adverse employment action is imminent, such a request can be 'too little, too late'"); ***Halpern v. Wake Forest Univ. Health Scis.***, 669 F.3d 454, 465 (4th Cir. 2012) ("[T]he law does not require the [defendant] to ignore misconduct that has occurred because the [claimant] subsequently asserts it was the result of a disability"); ***Davila v. Quest Corp.***, 113 Fed. Appx. 849, 854 (10th Cir. 2004) ("[E]xcusing workplace misconduct to provide a fresh start/second change to an employee whose disability could be offered as an after-the-fact excuse is not a required accommodation under the ADA").

Schaffhauser did not request accommodation or inform UPS of the relevant details of his disability. He fails to establish a genuine issue of material fact on his ADA claim.

\*\*\*\*\*\*\*

The judgment is affirmed.

_____

-11-