# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-1584

_____

Roberta Kowitz,

*Plaintiff - Appellant,*

v.

Trinity Health; Douglas Reinertson; Mark Waldera,

*Defendants - Appellees.*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: May 16, 2016
Filed: October 17, 2016

_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Roberta Kowitz appeals the district court's adverse grant of summary judgment on her claims that her former employer, Trinity Health, and former supervisors, Douglas Reinertson and Mark Waldera, violated her rights under the Americans with Disabilities Act (ADA) and the North Dakota Human Rights Act. The district court concluded that Kowitz failed to show she was capable of performing the essential

functions of her position, and that Trinity did not have a duty to reassign Kowitz to an alternate position. Because we conclude that Kowitz produced evidence that she could have performed the essential functions of her position with reasonable accommodation, we reverse.

## I. Background

Kowitz began working for Trinity Health in 2007 as a respiratory therapist in the cardiopulmonary department. She later assumed additional duties as a lead technician in the blood gas laboratory. Her direct supervisor was Reinertson, and Reinertson's direct supervisor was Waldera.

Kowitz had cervical spinal stenosis, a degenerative disease of the spine. On July 21, 2010, Kowitz requested leave under the Family and Medical Leave Act (FMLA) to have corrective neck surgery. Trinity approved her request to take leave from July 27, 2010 through September 10, 2010. On September 7, 2010, Kowitz's doctor determined she could not return to work until October 18, 2010. Kowitz requested an extension of her leave time until October 19, 2010. Trinity granted this request. After the extension, Kowitz had used all of the leave time available to her under the FMLA.

When she returned to work, Kowitz provided Trinity with a Return to Work Form, in which her doctor outlined her physical restrictions. The form stated that up until November 29, 2010, Kowitz would be restricted to working eight-hour shifts, and lifting, carrying, pulling, or pushing no more than ten pounds, among other restrictions. Kowitz also verbally informed Reinertson that she would be unable to work twelve-hour shifts until approved to do so by her doctor. Trinity assigned Kowitz to eight-hour shifts, rather than twelve-hour shifts, though Reinertson informed her that Trinity would not be able to accommodate the eight-hour shifts indefinitely.

On November 19, 2010, Reinertson posted a memorandum in the cardiopulmonary department's communication book directing department employees to provide updated copies of their basic life support certifications by November 26, 2010. The memorandum stated, "If you are not up to date on your BLS you will need to submit a letter indicating why you are not up to date and the date you are scheduled to take the BLS class." Several respiratory therapists, including Kowitz, did not have up-to-date basic life support certifications.

"Basic life support" refers to cardiopulmonary resuscitation, or CPR. Renewing a basic life support certification required taking a written examination and performing a physical demonstration of CPR. After Reinertson posted the memorandum, Kowitz took and passed the written examination. On November 30, 2010, Kowitz submitted a letter to Reinertson informing him that she would be unable to take the physical portion of the examination until cleared to do so by her doctor. Kowitz copied Waldera on the letter, as well as Trinity's human resources department. The letter stated, in part,

> This is to inform you that I will not be able to do the physical part of BLS until I have clearance from Dr[.] Transfeldt. I have an appointment with him on December 2. I will inform you via fax hopefully that day.
>
> Thank you for understanding my condition. It has been very stressful for me these past months. I am trying my best but at the same time I want to protect the surgery I had on my neck. I do go home after a[n] 8 hour shift and I have a lot of tightness in my neck and times when we are very busy, I have pain.

On December 2, 2010, Kowitz's doctor determined that she would need to complete at least four additional months of physical therapy before she would be able to complete the physical portion of the basic life support certification. Immediately after the appointment, Kowitz left Reinertson a voicemail message relaying her doctor's instructions. On December 3, 2010, Reinertson and Waldera informed

Kowitz that her employment was terminated because she was unable to perform basic life support.

Kowitz brought suit against Trinity, Reinertson, and Waldera, alleging, among other things, that she was unlawfully terminated on the basis of her disability. The district court granted summary judgment in favor of the defendants, concluding that Kowitz was not qualified to perform the essential functions of either of her positions because she was not certified to provide basic life support. The district court additionally concluded that because Kowitz never requested a transfer to another position within Trinity, Trinity was under no obligation to reassign her to a position that did not require basic life support certification.

## II. Discussion

The ADA and the North Dakota Human Rights Act prohibit employers from discriminating against employees on the basis of disability. 42 U.S.C. § 12112(a); N.D. Cent. Code § 14-02.4-03(1). Because North Dakota courts look to case law interpreting the ADA for guidance in interpreting the state statute, see Schweigert v. Provident Life Ins. Co., 503 N.W.2d 225, 227 (N.D. 1993), we will consider the claims together.

To establish a prima facie case of discrimination on the basis of a disability, a plaintiff must show that she "(1) has a 'disability' within the meaning of the ADA, (2) is a 'qualified individual' under the ADA, and (3) 'suffered an adverse employment action as a result of the disability.'" Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (quoting Duty v. Norton–Alcoa Proppants, 293 F.3d 481, 490 (8th Cir. 2002)). For an employee to be a qualified individual under the ADA, she must "(1) possess the requisite skill, education, experience, and training for h[er] position, and (2) be able to perform the essential job functions, with

-4-

or without reasonable accommodation." Id. at 712 (quoting Heaser v. Toro Co., 247 F.3d 826, 830 (8th Cir. 2001)).

Trinity argues that Kowitz was not a qualified individual under the ADA, because performing basic life support was an essential function of both of her positions. Essential functions "are the fundamental duties of the job, but not its marginal functions." Kallail v. Alliant Energy Corp. Servs., Inc., 691 F.3d 925, 930 (8th Cir. 2012). In determining whether a job function is essential, we consider several factors, including "what functions the employer thinks are essential, written job descriptions, how much time an employee spends on the job performing the function, the consequences of not having the employee perform the function, and whether other current employees in similar jobs perform the function." Scruggs v. Pulaski Cty., 817 F.3d 1087, 1092 (8th Cir. 2016).

The job description for Kowitz's position as lead technician in the blood gas laboratory states that basic life support certification is required. For the respiratory therapist position, Kowitz produced one job description that states basic life support certification is "preferred, but not required." The defendants, on the other hand, submitted other versions of the job description, which state that basic life support certification is required, or would be required within 30 days of hiring. Additionally, Reinertson and Waldera both testified that certification was necessary for respiratory therapists to ensure the safety of their critically ill patients.

There is some dispute as to how often respiratory therapists might be required to perform chest compressions. Another respiratory therapist testified that she was required to perform basic life support independently up to five times per year, and as part of a team up to ten times per year. She testified that, depending on how many employees were assisting in administering basic life support, respiratory therapists could be required to perform chest compressions and airway management. Waldera, on the other hand, testified that he was unaware of any respiratory therapist

performing chest compressions during his twelve years at Trinity. Nonetheless, Waldera testified that regardless of how frequently it was required, respiratory therapists were expected to perform basic life support independently when necessary to save a patient's life. Finally, even though several respiratory therapists' certifications had lapsed at the time Reinertson posted his memorandum, every respiratory therapist except for Kowitz obtained an updated certification by the November 26, 2010 deadline. Given this evidence, there was no genuine issue of material fact as to whether the certification was an essential function of both of Kowitz's positions.

The question, then, is whether Kowitz could have performed this essential function with an accommodation, and if so, whether Trinity failed to reasonably accommodate her. According to Kowitz, Trinity should have allowed her additional time to complete her basic life support certification, or reassigned her to another position that did not require the certification. The district court rejected this argument, concluding that Kowitz produced no evidence that she ever requested an accommodation for her inability to perform basic life support.

When a disabled employee requests an accommodation for her disability, the employer must engage in an interactive process with the employee to determine whether a reasonable accommodation is possible. E.E.O.C. v. Convergys Customer Mgmt. Grp., Inc., 491 F.3d 790, 795 (8th Cir. 2007). The employee is responsible for initiating the process "by making [her] employer aware of the need for an accommodation." Id. The employee "must provide relevant details of [her] disability and, if not obvious, the reason that [her] disability requires an accommodation" so that the employer can identify and propose potential options, but she need not use technical language to make the request or suggest what accommodation might be appropriate. Id. This is in keeping with the logic of the interactive process, which is intended to be "informal and flexible"—the employee is responsible for providing relevant information about her condition and needs, and once aware of those needs

-6-

the employer is responsible for considering how best to accommodate them. <u>Kratzer v. Rockwell Collins, Inc.</u>, 398 F.3d 1040, 1045 (8th Cir. 2005); <u>see</u> <u>Convergys</u>, 491 F.3d at 795.

Kowitz has presented sufficient evidence to raise a genuine issue of material fact as to whether she requested an accommodation. Upon being told that her basic life support certification was due, Kowitz notified her supervisor in writing that she was unable to complete the physical component of the certification until she had been cleared to do so by her doctor. At this point, Trinity was already aware of Kowitz's disability based on her prior FMLA leave for neck surgery and the information provided in her Return to Work Form. Kowitz advised her supervisor that she had an appointment scheduled with her doctor in a few days, and would inform him of her clearance that day. Kowitz also indicated that she was still experiencing neck pain, and thanked her supervisor for understanding her condition. After her doctor's appointment, Kowitz called her supervisor and left a voicemail notifying him that she required four months of physical therapy before she would be able to complete the life support certification. The next day, Kowitz was terminated from her position at Trinity, with no further discussion.

Based on these facts, a reasonable jury could conclude that Kowitz had "[made her] employer aware of the need for an accommodation." <u>Convergys</u>, 491 F.3d at 795. Though Kowitz did not ask for a reasonable accommodation of her condition in so many words, viewing the facts in the light most favorable to Kowitz, her notification to her supervisor that she would not be able to obtain the required certification until she had completed physical therapy implied that an accommodation would be required until then. Though we have held that an employer's duty to accommodate an employee is not triggered until the employee clearly requests an accommodation, in those cases the ostensible requests were significantly more ambiguous. <u>See</u> <u>E.E.O.C. v. Prod. Fabricators, Inc.</u>, 763 F.3d 963, 968 (8th Cir. 2014) (the employee said that he was "fine," never requested an accommodation, and

did not seek evaluation for his condition until after his termination); Ballard v. Rubin, 284 F.3d 957, 962 (8th Cir. 2002) (the employee specifically stated that he did not want an accommodation, while also stating that it was "appropriate" for him to consider his doctor's recommendations); Mole v. Buckhorn Rubber Prods., Inc., 165 F.3d 1212, 1216 (8th Cir. 1999) (the employee never requested an accommodation, but rather told her supervisor that she was "feeling fine" and had been approved to return to work).

By contrast, in this case there was evidence from which a jury could find that Trinity should have understood—or did understand—Kowitz's communications to be a request for an accommodation. Trinity was aware of Kowitz's specific condition, as well as the general nature of the limitations it placed on her. Kowitz referred to her surgery, prior leave, and ongoing pain in her written notification that she would be unable to complete the life support certification without medical clearance. Kowitz's Return to Work Form, completed less than two months before her termination, stated that she could not lift, carry, pull, or push more than ten pounds. While the Return to Work Form did not explicitly say that Kowitz could not complete the physical component of basic life support certification, there is nothing in the record to show that she knew, at the time the form was completed, that she would be required to recertify by a date certain and before she was physically able to do so. Indeed, the evidence suggests that the certification requirement had not been rigorously enforced; rather, Reinertson required an updated certification from employees only after realizing that several therapists had expired certifications. The record does show that Kowitz advised her supervisor of her inability to complete the certification requirement on November 30, and again on December 2—several days after the November 26 deadline for providing an up-to-date certification. But Kowitz's delay is not dispositive of whether she made the request, and it is for a jury to decide how to reconcile that fact with the rest of the evidence.

-8-

An employee is required only to "provide[] the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." Ballard, 284 F.3d at 962 (quoting Taylor v. Phoenixville Sch. Dist., 174 F.3d 142 (3d Cir.), vacated on other grounds, 184 F.3d 296 (3d Cir. 1999)). This determination necessarily accounts for the employer's knowledge of the disability and the employee's prior communications about the disability, and is not limited to the precise words spoken by the employee at the time of the request. When Kowitz advised her supervisor that she would be unable to complete the physical requirements of her basic life support certification until she had done four months of physical therapy, she was not required to "formally invoke the magic words 'reasonable accommodation'" to transform that notification into a request for accommodation. Id. (quoting Taylor, 174 F.3d at 158). Viewed in context, Kowitz's written notification that she would be unable to complete the basic life support certification without medical clearance, and her statement that she required four months of physical therapy before completing the certification, could readily have been understood to constitute a request for a reasonable accommodation of her condition.[1]

## III. Conclusion

Because there remains a genuine issue of material fact as to whether Kowitz made a request for an accommodation sufficient to trigger Trinity's duty to engage

---

[1]The dissent asserts that this conclusion collapses the distinction between the requirement that the employer know of the employee's disability, and the requirement that the employee request a reasonable accommodation. But our holding is not so broad: We conclude merely that a reasonable jury could find that Trinity understood Kowitz's communications to be a request for accommodation, and not simply an additional notification of her disability.

in the interactive process of identifying a reasonable accommodation, the judgment of the district court is reversed and remanded for further proceedings.

COLLOTON, Circuit Judge, dissenting.

The court's opinion is significant doctrinally, because it collapses two elements of a disability discrimination claim. The decision effectively eliminates what this court consistently has called a "predicate requirement"—*i.e.*, that an employee seeking a reasonable accommodation from her employer must clearly request accommodation before the employer has an obligation to engage in the "interactive process" contemplated by the Americans with Disabilities Act. Because Roberta Kowitz never requested an accommodation for the disability that made her unable to perform an essential function of her job, I would affirm the judgment of the district court.

Kowitz could not perform basic life support, which was an essential function of her job as a respiratory therapist and lead technician in the blood gas lab at Trinity Health. Trinity required that all employees provide a basic life support certification by November 26, 2010, and Kowitz failed to do so. After Kowitz informed her supervisor on December 2 that she could not complete her certification until she had completed at least four months of physical therapy, Trinity terminated her employment.

Kowitz now argues that Trinity failed to make a reasonable accommodation of her disability. *See* 42 U.S.C. § 12112(b)(5)(A). Kowitz asserts that Trinity should have given her a longer grace period within which to obtain her basic life support certification or reassigned her to an open position that did not require performance of life support.

-10-

An employee alleging that an employer failed to make a reasonable accommodation must prove, among other things, two separate elements: (1) that the employer knew about her disability, and (2) that she requested an accommodation or assistance for her disability. *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 906 (8th Cir. 2015). A request for accommodation is a "predicate requirement" to initiate the interactive process. *EEOC v. Prod. Fabricators, Inc.*, 763 F.3d 963, 971 (8th Cir. 2014); *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1045 (8th Cir. 2005); *Ballard v. Rubin*, 284 F.3d 957, 960 (8th Cir. 2002); *see also Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 847 (8th Cir. 2015). Quoting the EEOC's interpretive guidelines, we have explained: "*Once a qualified individual with a disability has requested provision of a reasonable accommodation*, the employer must make a reasonable effort to determine the appropriate accommodation." *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 951 (8th Cir. 1999) (emphasis added) (quoting 29 C.F.R. § 1630, App. § 1630.9).

This is not an onerous burden on the employee. There is no requirement to use magic words like "reasonable accommodation," but the employee's notice must "*make it clear* to the employer that the employee wants assistance for his or her disability." *Id.* at 952 n.5 (emphasis added); *accord Ballard*, 284 F.3d at 962 (explaining that notice to the employer "*must make clear* that the employee wants assistance for his or her disability") (emphasis added). We affirmed a summary judgment in *Product Fabricators* because the evidence did "not indicate that [the employee] made *a specific request for an accommodation*." 763 F.3d at 971 (emphasis added). In the court's favored precedent, *EEOC v. Convergys Customer Management Group, Inc.*, 491 F.3d 790 (8th Cir. 2007), the employee did not merely notify his employer of an inability to work due to disability and then claim that the employer should have inferred a request for assistance; he "testified at trial that *he requested an accommodation because of limitations created by his wheelchair*, thus meeting his initial burden." *Id.* at 795. The plaintiff in *Ballard* generated an issue of

-11-

fact on the request element by asking the employer to account for his doctor's recommendations of curtailing travel and to take his physical limitations into account before requiring out-of-town travel. 284 F.3d at 962.

It is undisputed that Kowitz never requested an accommodation for her inability to perform basic life support. She merely informed supervisor Reinertson that she was unable to attempt to obtain a basic life support certification until she had completed four months of physical therapy. That notification of Kowitz's disability does not create a genuine issue of fact concerning whether Kowitz requested an accommodation. As the district court explained, "Kowitz admits she never made a request or even mentioned to Waldera, Reinertson, or the Trinity Health HR Department she was interested in transferring to a vacant position within Trinity Health." R. Doc. 75, at 14. And "Kowitz never applied for any positions with Trinity Health despite knowing job vacancies were posted on Trinity's website which she was familiar with and had access to." *Id*.

In rejecting the district court's judgment, the court conflates the employer's knowledge of an employee's disability with the requirement that an employee must make a clear request for accommodation. Any employee who notifies an employer that she cannot work because of a disability can be said in some sense to have made her employer "aware of the need for an accommodation." *Ante*, at 7. But we have never said that merely notifying the employer of a disability is an "implied" request, *id*., sufficient to trigger an employer's duty to engage in the interactive process. We have said precisely the opposite: an employee must make it clear that she wants assistance or accommodation. Even where an employer previously has made reasonable accommodation, an employee who wants additional assistance cannot "expect the employer to read her mind and know she secretly wanted a particular accommodation and then sue the employer for not providing it." *Mole v. Buckhorn Rubber Prods., Inc.*, 165 F.3d 1212, 1218 (8th Cir. 1999) (internal quotation and

brackets omitted).  It is not the court's place to impose a rule based on how a beneficent employer would treat an employee who notifies the employer of a disability, even if some employers might well take it upon themselves to initiate an interactive process without a request from the employee.

People should be entitled to clarity in the law.  Employers and employees rely on predictability to make efficient decisions and to avoid costly and burdensome litigation.  There is no practical difference between asserting that this record creates a genuine issue of fact for trial, *ante*, at 9 n.1, and collapsing what heretofore have been two separate elements of a disability discrimination claim.  By eliminating the requirement of a clear request for accommodation that is distinct from notice of disability, the court generates regrettable uncertainty.  I would affirm the judgment.

_____