# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-1066
_____

Rochelle Garrison

*Plaintiff - Appellant*

v.

Dolgencorp, LLC; Sandra Bell

*Defendants - Appellees*

------------------------------

Equal Employment Opportunity Commission

*Amicus on Behalf of Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: February 13, 2019
Filed: October 3, 2019
_____

Before SMITH, Chief Judge, BENTON and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

After Dollar General denied Rochelle Garrison's request for a leave of absence, she quit and sued for disability discrimination and retaliation. We conclude that her reasonable-accommodation claim under the Americans with Disabilities Act can proceed, but that her others cannot.

I.

Garrison was a lead sales associate at a Dollar General store in Concordia, Missouri. Her immediate supervisor was Sandra Bell, who, like Garrison, had a key to open and close the store. The four "key holders" had to coordinate their schedules so that at least one of them could be there when the store opened and closed each day.

Garrison, who suffers from anxiety, migraines, and depression, wished to take a leave of absence due to her worsening medical condition. At one point, following a visit to her doctor, Garrison texted Bell and asked, "[h]ow can I request a leave of absence[?]," to which Bell responded, "I'm not sure [but] I'll talk to [the district manager]."

One week later, Garrison followed up by texting Bell again. She also asked about a rumor that she intended to quit, which Bell had allegedly spread among her co-workers. Bell did not initially respond, but Garrison was persistent. When Bell finally texted back, she had three messages for Garrison: "there [was] no [leave of absence]," she could remain with Dollar General as long as she could "do the job and not be sick all the time," and she should "[r]ead the employee handbook."

Garrison and Bell later met in person. During the meeting, Garrison made clear that she was seeking a leave of absence due to anxiety and depression. Bell reiterated that she did not believe that any form of leave was available and warned Garrison that she could not remain a full-time employee or continue as a key holder if she kept missing shifts.

The following week, Garrison missed a shift due to an emergency-room visit for gastritis and anxiety. She requested vacation for the remainder of the week, but Bell refused because two of the four key holders (including Bell herself) were scheduled to be gone. Garrison then informed Bell that she was quitting because it was the only way she could "get better." Dollar General replaced Garrison with someone Bell had hired about a week earlier, after the subject of leave had come up.

Garrison sued Bell and Dollar General in Missouri state court. She claimed that they discriminated against her under both the Americans with Disabilities Act ("ADA") and the Missouri Human Rights Act ("MHRA"), interfered with her ability to seek medical leave under the Family and Medical Leave Act ("FMLA"), and retaliated against her for attempting to exercise her rights under each of these laws. The defendants removed the case to federal district court, which dismissed Garrison's lawsuit in its entirety on summary judgment.

## II.

"We review the district court's decision to grant summary judgment de novo." *Tonelli v. United States*, 60 F.3d 492, 494 (8th Cir. 1995). "Summary judgment is appropriate when the evidence, viewed in a light most favorable to the nonmoving party, shows no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) (citation omitted).

## A.

We start with Garrison's strongest claim: that she was entitled to an accommodation under the ADA. We must assume—because neither of the defendants disputes it on appeal—that Garrison has presented enough evidence to establish a disability. What remains contested, however, is the availability of an

accommodation. *See generally Peebles v. Potter*, 354 F.3d 761, 766–67 (8th Cir. 2004) (discussing failure-to-accommodate claims).

To succeed on her claim, Garrison must establish that: (1) Dollar General knew that she was disabled; (2) she requested an accommodation; (3) Dollar General failed to engage in a "flexible" and "informal[] interactive process" with her about possible accommodations; and (4) her disability could have been reasonably accommodated had the interactive process taken place. *See Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 951-52 (8th Cir. 1999) (citation omitted); *see also Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 906 (8th Cir. 2015). There is evidence from which a reasonable jury could conclude that each of these requirements has been met.

To start, considerable evidence suggests that Bell knew about Garrison's disability. Garrison discussed her health problems with Bell, including the medications she was prescribed to treat them, and informed her whenever she needed to be absent for doctor's appointments. Indeed, Bell's texts make it clear that she understood that Garrison's absences from work and her inquiries about leave were due to her health.

The closer question is whether Garrison did enough to put Dollar General on notice that she was seeking an accommodation. The test is whether she made Dollar General "aware of the need for an accommodation." *EEOC v. Convergys Customer Mgmt. Grp., Inc.*, 491 F.3d 790, 795 (8th Cir. 2007); *see also Kowitz v. Trinity Health*, 839 F.3d 742, 746 (8th Cir. 2016).

Garrison repeatedly told Bell that she wanted to take a leave of absence, even if she never referenced the ADA. *See Brannon v. Luco Mop Co.*, 521 F.3d 843, 849 (8th Cir. 2008) (noting that "a medical leave of absence might, in some circumstances, be a reasonable accommodation" under the ADA). By our count,

assuming Garrison's evidence is true, she asked about leave no fewer than four times.

To be sure, Garrison never used the word accommodation or asked about anything other than leave. But our analysis "is not limited to the precise words spoken by the employee at the time of the request," and an employee need not even suggest what accommodation might be appropriate to have an actionable claim. *Kowitz*, 839 F.3d at 746, 748. Here, Bell knew that Garrison suffered from various medical conditions, that those conditions had been worsening and had required regular doctor visits, and that she had repeatedly inquired about a leave of absence to deal with them. Under these circumstances, a reasonable jury could conclude that Garrison requested an accommodation, even if she never used those "magic words," *Kowitz*, 839 F.3d at 748 (citation omitted), because she made Dollar General "aware of the need for" one, *Convergys Customer Mgmt. Grp.*, 491 F.3d at 795. *See Kowitz*, 839 F.3d at 748 (explaining that the ADA analysis "accounts for the employer's knowledge of the disability and the employee's prior communications about the disability").

We reach a similar conclusion about the adequacy of Dollar General's engagement in what was supposed to be an "interactive process." *Fjellestad*, 188 F.3d at 952. Once Garrison made the request, Dollar General had an obligation to "take some initiative" and identify a reasonable accommodation. *Id.* at 953 (citation omitted); *see Kowitz*, 839 F.3d at 746 ("[O]nce aware of [an employee's] needs[,] the employer is responsible for considering how best to accommodate them."). All Bell did, however, was direct Garrison to read the employee handbook, which was not enough. *See Cravens v. Blue Cross & Blue Shield of Kan. City*, 214 F.3d 1011, 1021–22 (8th Cir. 2000) (holding that a company's failure to provide active assistance to an employee seeking an accommodation created "at least an issue of fact" about whether it fulfilled its obligations).

A factual dispute also exists about whether Dollar General, if it had engaged in the interactive process, could have reasonably accommodated Garrison's disability. *See Fjellestad*, 188 F.3d at 953 (noting that reasonable-accommodation claims cannot "typically" be resolved in favor of the employer on this ground at summary judgment if the employer failed to engage in the interactive process). After all, Dollar General was only obligated to provide a *reasonable* accommodation, not the particular one that Garrison requested. *Faidley v. United Parcel Serv. of Am., Inc.*, 889 F.3d 933, 942–43 (8th Cir. 2018) (en banc); *see also Fjellestad*, 188 F.3d at 953 (explaining that an employer cannot "sit back passively, offer nothing, and then, in post-termination litigation, try to knock down every specific accommodation as too burdensome" (citation omitted)). And here, Bell testified that she would have "protect[ed]" Garrison's job and made it work if Garrison had been entitled to FMLA leave. *See also* 29 U.S.C. § 2612(a). So it stands to reason that Dollar General could have found a way to make leave (or some other reasonable accommodation) work under the ADA too had Bell considered it.

On this record, a reasonable jury could conclude that Dollar General was aware of Garrison's disability; that she requested an accommodation; and that Dollar General, had it engaged in the interactive process, could have reasonably accommodated her. There is, in other words, enough here to survive summary judgment.[1]

---

[1]In contrast, to the extent that Garrison's identically pleaded MHRA claim relies on Dollar General's alleged failure to provide a reasonable accommodation, it cannot survive summary judgment. To bring a reasonable-accommodation claim under the MHRA, Garrison must show that she suffered an "adverse employment action," *Markham v. Wertin*, 861 F.3d 748, 756 (8th Cir. 2017), which she has not done, *see infra* Part II.B.

B.

The same is not true of Garrison's other claims, beginning with those alleging unlawful retaliation under the ADA, MHRA, and FMLA.  For these claims, Garrison would need to prove that Dollar General took an adverse employment action against her that was causally connected to her leave request.  *See Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042-43 (8th Cir. 2007) (discussing retaliation under the ADA); *see also Hasenwinkel v. Mosaic*, 809 F.3d 427, 432-33 (8th Cir. 2015) (same for the FMLA); *Kader v. Bd. of Regents of Harris-Stowe State Univ.*, 565 S.W.3d 182, 189-90 (Mo. banc 2019) (same for the MHRA).  The adverse employment action must have been serious enough to "dissuade[] a reasonable worker," not just Garrison herself, from engaging in protected conduct.  *Stewart*, 481 F.3d at 1046 (brackets in original) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)).

Garrison relies on two actions, both allegedly by Bell: telling co-workers that Garrison intended to quit and warning her that she could no longer be a key holder or a full-time employee if she did not work her assigned shifts.  Neither action, however, amounted to retaliation.

The rumors cannot serve as the basis of a retaliation claim because they would not dissuade a reasonable worker from pursuing his or her rights.  Rather, they are at the level of "petty slights [and] minor annoyances" that, though upsetting, are not actionable.  *White*, 548 U.S. at 68; *see also Littleton v. Pilot Travel Ctrs., LLC*, 568 F.3d 641, 644 (8th Cir. 2009) (noting that "retaliation cannot be trivial; it must produce some injury or harm" (internal quotation marks and citation omitted)); *Kader*, 565 S.W.3d at 190 ("An action is not adverse simply because it is upsetting or disappointing to an employee.").

Nor did the potential loss of key-holder or full-time status rise to the level of an adverse employment action.  Even viewing the facts in the light most favorable

to Garrison, Bell only told her that her role would change *if* she did not qualify for leave and continued to miss work. This was not a threat to demote her for attempting to exercise her statutory rights. Rather, it provided notice that *unexcused* absences from work would have consequences. *See Hill v. Walker*, 737 F.3d 1209, 1219 (8th Cir. 2013); *cf. Fercello v. Cty. of Ramsey*, 612 F.3d 1069, 1080 (8th Cir. 2010) (holding that a performance review prompted by negative reports and concerns about an employee's workload was not retaliatory).

To the extent Garrison alleges, in addition to her retaliation claim, that Dollar General took an adverse employment action against her because of her disability, this claim fares no better. The theory seems to be that she was constructively discharged.[2] To succeed on a constructive-discharge theory, Garrison would have to show that Dollar General created "working conditions [that were] so intolerable that a reasonable person in [her] position would have felt compelled to resign." *Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016) (citation omitted); *see also Cosby v. Steak N Shake*, 804 F.3d 1242, 1246 (8th Cir. 2015) (applying the same requirement to constructive-discharge claims under the MHRA).

Bell's actions, even if insensitive, would not alone have left a reasonable worker with no choice but to resign. Rather, assuming that Garrison is sincere in her belief that she "ha[d] to quit . . . to get better," the reason would have been her worsening medical condition, not any intolerable working conditions that Dollar General itself *created*. *See Fenney v. Dakota, Minn. & E.R.R. Co.*, 327 F.3d 707, 717 (8th Cir. 2003) (explaining that employees are constructively discharged when they have "no choice but to quit because of the *employer's* actions" (emphasis added)).

_____

[2]Garrison also suggests that she "was demoted," but as we explain above, Dollar General never actually demoted her. At most, Bell threatened to demote her if she could not do her job.

C.

Garrison finally alleges that she was denied FMLA-mandated leave. Under the FMLA, employees are generally entitled to take "up to twelve weeks of unpaid leave to deal with a serious health condition." *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir. 1999). An employer has no obligation to provide leave, however, unless employees provide notice that they "may be in need of" it. *Id.* at 1049; *see also Smith v. AS Am., Inc.*, 829 F.3d 616, 621 (8th Cir. 2016) (describing the elements of an FMLA-interference claim). "[A]bsent unusual circumstances," an employee must generally follow an "employer's usual and customary notice and procedural requirements." 29 C.F.R. § 825.302(d); *accord id.* § 825.303(c).

Here, by her own admission, Garrison did not do so. According to Dollar General's employee handbook, the initial step for an employee requesting leave is to "notify his or her manager," followed "immediately" by contacting Matrix Absence Management, Dollar General's third-party leave administrator, "to initiate the leave approval process." By failing to complete the second step, she lost any right that she had to FMLA leave. *See* 29 C.F.R. § 825.302(d) (stating that failing to follow an employer's procedural requirements can result in FMLA leave being "delayed or denied"); *id.* § 825.303(c) (same).

To be sure, Bell suggested that FMLA leave was unavailable. But those statements, even if inaccurate, do not amount to "unusual circumstances" that would excuse Garrison's noncompliance with Dollar General's procedures. After all, it is undisputed that Bell told Garrison to read the employee handbook, which laid out the steps for requesting leave, and had she done so, nothing would have prevented her from contacting Matrix herself. *Cf.* 29 C.F.R. § 825.302(d) (giving as an illustration of an "unusual circumstance" a situation in which "there is no one to answer the call-in number" for making leave requests and the "voice mail box is full").

### III.

We affirm the district court's judgment in part, reverse in part, and remand for further proceedings.

_____